DAVIS *et al. vs.* THE COVINGTON AND MACON RAILROAD COMPANY.

[Blandford, J., did not preside in this case, on account of providential cause.

1. Objection made at the hearing of an application for injunction to the reading of certain affidavits, because they were not procured and furnished within the time agreed upon in a previous stage of the hearing, being overruled by the presiding judge, the presump-tion is that they were, in fact, procured and furnished within the time, unless the contrary appears. In this case the contrary does not appear.

2. A general objection to affidavits, because the facts stated therein

are illegal and irrelevant, will not be sustained, if any of the facts are legal and relevant evidence.

3. Rebutting testimony to that of a specified witness is any legal testimony which bears against the truth or accuracy of what that witness has sworn.

4. The constitutional inhibition against taking private property for public purposes without just and adequate compensation being first paid, does not constrain the granting of an *ad interim* injunction in favor of the owner of the fee against a railroad company, where there is an apparently *bona fide* claim on the part of the railroad company to the right of way in dispute, whether the claim, if well founded, would amount to a legal title in the company or to a mere license from another company having such title.

5. On the hearing of an injunction, the question of receiving secondary evidence is somewhat discretionary with the presiding judge; he need not require absolutely that all means of discovering the primary evidence be exhausted.

January 25, 1887.

Practice in Superior Court. Presumptions. Evidence. Constitutional Law. Eminent Domain. Railroads. Injunction. Before Judge FORT. Bibb County. At Chambers, June 16, 1886.

Clara E. Davis, individually an as executrix of her mother, and Minnie Davis filed their bill against the Covington and Macon Railroad Company to enjoin it from entering on certain land and laying its track without first paying adequate compensation therefor. It was alleged that some years previously, the Macon and Augusta Railroad Company built its road and used a right of way through the lands in question. It was denied that such company had title to this right of way, or any right to use it, but was alleged that if it ever owned or had such right, it had abandoned it, and some six or seven years previously had torn up its track and ceased to use the way; that complainants took possession and had since held it; that the Macon and Augusta Railroad, with its franchises, was sold at judicial sale; and that the land on which the defendant was about to enter and lay its tracks belonged to the complainants; also that the complainants knew of no property

of the defendant within the State, except its franchises and such easements as it may have acquired.

In its answer, the defendant alleged, in brief, the following facts: The complainants claim under their grandfather, who owned the land in his lifetime. After his death, his executrix, Mrs. McCall, sold the right of way to the Macon and Augusta Railroad Company and made a deed thereto. That company entered and built its road through the land. Subsequently it was sold at judicial sale to the Georgia Railroad and Banking Company, and this part of the track was used by it until 1881, when the bridge over the Ocmulgee river was washed away. The defendant is advised and believes that when, some months later, the track and cross-ties were removed from this section of the right of way, it was not intended as a permanent abandonment. W. M. Wadley leased the lines of the Georgia Railroad, the lease containing a clause providing that it was subject to be terminated at any time on failure to pay the annual rental, and the Georgia Railroad contemplated the possibility of resuming possession of this right of way, and laying its tracks thereon. In 1886, the Georgia Railroad made a lease of a short section of its right of way, including that part in controversy, to the city of Macon for ninety-four years, providing in the lease for a resumption of possession in case the lease to Wadley terminated at any time, and for paying for betterments in such event, etc. With the written consent of the Georgia Railroad, the city of Macon assigned this lease to the Covington and Macon Railroad, and under this assignment the defendant claims the right to lay down its track along the right of way formerly occupied by the Macon and Augusta Railroad. Insolvency was denied.

It is unnecessary to set out the evidence, further than to state that there was some conflict as to whether Mrs. McCall, as executrix of her husband, had made a deed to the Macon and Augusta Railroad to this right of way. She stated that she had no recollection of doing so, while

the testimony of the witnesses for the defendant tended to show that it was made. The will of McCall left his property to his wife and two daughters; directed that it should be kept together for their joint use during the life of the wife; and provided that she might sell her interest and re-invest the proceeds, her estate therein being for life with remainder to her two daughters. She and another were appointed executrix and executor.

The questions of practice are sufficiently stated in the decision.

A temporary injunction was refused; and the complainants excepted.

DESSAU & BARTLETT, for plaintiffs in error.

HILL & HARRIS; HARRISON & PEEPLES, for defendant.

BLECKLEY, Chief Justice.

1. The hearing of the application for injunction commenced on the 16th of June. Some of the evidence was submitted, and it was agreed that defendant's counsel should have until and during the 19th to rebut two of the affidavits introduced by the complainants, and that any rebutting affidavits might be sent to the judge on or during this latter day, for his consideration. Such affidavits were to be exhibited to complainants' counsel, who should have the right to submit objections to the same, together with additional briefs. Under this agreement, defendant procured and furnished to his honor five affidavits, sworn to on the 18th, and one sworn to on the 19th of June. To the last named, which was sworn to in Wilkes county, and to one of the five, which was sworn to in Richmond county, complainants' counsel objected, because they were not procured and furnished in the time allowed and agreed upon.

We cannot see that the judge did wrong to overrule this objection. True he was sitting at Americus, in Sum-

ter county, and the affidavits were sworn to at a distance of many miles from that place, yet with the rapid means of communication now so common, they may have reached him on the very days they bear date. It is not disclosed in the record when he received them. Besides, the agreement did not say when they should be received, but only when they should be sent.

As the judge considered them, overruling this objection, the presumption is that they were sent in time. Nothing appears to the contrary, and there is no complaint in the record that they were not exhibited to complainants' counsel as stipulated in the agreement.

2. Another objection made to the consideration of these affidavits was that the facts stated in them were illegal and irrelevant. This objection is quite general, and could not prevail if any of the contents of the affidavits were legal and relevant evidence. And some of them certainly were; for they went to show the existence and contents of an instrument purporting to be a deed (alleged to be lost) conveying the right of way in controversy, and to prove the handwriting of one of the subscribing witnesses to the instrument. That along with relevant and admissible matter the affidavits contained matter which was irrelevant and inadmissible is no doubt true; but the two classes were separable, and in making the objection, the counsel should have pointed out the latter specifically, and aimed the objection at it alone. The whole is not killed by what is mortal to a part only.

3. Still another objection was made and overruled. It was, that these two affidavits were not in rebuttal to the two specified in the agreement. Not to both of them, but to one of them, they *were* in rebuttal; for the deponent in this one was the person who purported to have executed the alleged lost deed, and her affidavit denied, in a qualified way, that she had executed any deed. Proof of the handwriting of a subscribing witness (admitted in the argument here to have been dead at the time of the hearing),

and of the contents of the deed, tended to show that her denial was, by mistake or otherwise, not in accord with the actual fact. In other words, her affidavit bore against the genuineness of the deed, and these affidavits bore against the accuracy of her testimony. What more was needed to stamp them as rebutting evidence?

4. On the merits of the case, simply as one for injunction *ad interim,* we can see no reason, not the slightest reason, for interfering with the discretion exercised by the chancellor in denying it. So far as this short section of railway is concerned, it is not an attempt to construct a new road-bed, but to resume the active occupation and use of an old one. The land-owner's property was taken for railroad purposes in 1869, so far as appears, without ob-jection, and was in continuous use, also without objection, up to 1880 or 1881. Whether this use was founded on good or defective title, and whether if in the latter a title by prescription resulted, and whether if it ever existed, the right, such as it was, has been lost by non-user or abandonment, are questions appropriate to be tried with the aid of a jury, and the chancellor may wait for that aid if his conscience is not satisfied without. Suppose that the first railroad company obtained only a right of user during the life of Mrs. McCall, or whilst she continues in the office of executrix, she is not yet dead, nor, so far as appears, out of office as executrix. Nor is she seeking to resume the subject of her alleged grant, or complaining of anything which has been or is being done. Suppose, too, that the second railroad company, which entered on this right of way as successor of the first by purchase of its assets, could not lease to the city of Macon, and the city could not transfer that lease to the third railroad company, the one now seeking to enter and occupy, yet it may be that the instrument of lease and its transfer can be construed as a license from the second to the third company to use this short section of road-bed for the term specified in the lease. At all events, there appears to be a *bona fide*

claim on the part of the third company to a right derived from the second company, a company which once had actual possession, and this right has color enough to warrant the chancellor in leaving it for solemn adjudication with the other questions in the case.

Without entering upon the capacity of one railroad company to lease or occupy the whole or any considerable part of the track of another company by virtue of the general law applicable to the charter of this third company, we are not prepared to hold that a short section cannot be used by license voluntarily granted, as well as by condemnation.   Without ruling upon the subject in a way to conclude ourselves or either of the parties, we should say that if the second company had this right of way, and has not lost it by abandonment or otherwise, though it might exist only for a term of years, definite or indefinite, that company could now put its track and its trains back, and could allow the third company to run its trains there also until the term expired.   And if this could be done, it is not at all clear to us why the second company could not license the third, for the same length of time or any shorter time, to lay down a track and have its exclusive use.   Especially in view of the charter of the second company (the Georgia Railroad) and also of the charter of the third company as set out in the general law contained in the code, §§1689(a) to 1689(vv), adopted as the charter of this company by acts of 1864–5, p. 229.   But as the chancellor has done, so do we leave open all questions of law on the merits of the controversy, to be solemnly adjudicated when there shall be a final trial decisive upon the rights of these litigants.

We cannot think that the constitutional provision urged upon us so zealously in the argument modifies in any way what would otherwise be correct equity practice in such a controversy as this.   Here is a constructed railroad bed already once taken, and the effort is to hold and enjoy under that taking, not to take afresh.   It is a contro-

versy, apparently *bona fide* on both sides, concerning title. For the company to join in any proceeding to assess the damages, as for a present taking, would be wholly to abandon this controversy, and yield, without resistance, to the title set up by complainants.

With regard to secondary evidence of the lost deed, the chancellor thought proper to admit it upon proof which traced the deed to an agent of the company, and from him to the mail under cover of a letter to the clerk of Bibb superior court, to whom it was sent to be recorded, and upon an affidavit of the deputy clerk that it was not upon record, nor in the clerk's office, nor had it been received there within six months last preceding. This period covered the time within which it was mailed by the agent. The handwriting of a deceased subscribing witness was proved, together with the substance of the contents of the instrument. Another deceased person, whose handwriting was not proved, was shown to have probably been the other witness to the deed. The only doubt upon the secondary evidence arises out of the omission to examine the clerk as well as the deputy clerk. But this step was somewhat discretionary with the chancellor, and he probably knew of some reason for not exhausting this last source of information. The clerk was of the same court in which the bill was pending, and was, it may be presumed, equally accessible to both parties. Moreover, the paper, if ever received, being one to be recorded and then held in the office till called for, and being neither recorded nor in the office, it was a fair inference that it had been lost in transmission. Under such circumstances, it was not indispensable that this one remaining means of discovering the primary evidence should be exhausted.

Our conclusion is that there was no error of practice committed on the hearing and that the injunction was properly denied.

Judgment affirmed.