## A05A1042. SPEED v. MUHANNA.
### (619 SE2d 324)

BLACKBURN, Presiding Judge.

In this medical malpractice action, Henry Speed appeals the trial court's grant of summary judgment to Dr. Shajih Muhanna, arguing that his attorney had no authority to release his medical malpractice claim against Muhanna, and that a letter to Muhanna from Speed's attorney did not constitute a release of that claim. For the reasons which follow, we affirm.

The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*.[1] When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. Further, any doubts on the existence of a genuine issue of material fact are resolved against the

---

[1] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

movant for summary judgment. When this court reviews the grant or denial of a motion for summary judgment, it conducts a de novo review of the law and the evidence. On motions for summary judgment, the court cannot resolve the facts or reconcile the issues.

(Citations omitted.) *State Farm Fire &c. Co. v. Goodman.*[2]

Viewed in this light, the record shows that, on February 14, 1999, Speed injured his foot at a Sports Authority store. In November 1999, Speed retained Scott Zahler to represent him in pursuing any claims he might have "against Sports Authority, and any other Defendants later named or identified as a result of" the February 14 incident. On December 11, 2000, Zahler filed a premises liability action against Sports Authority on Speed's behalf.

Over a year later, Speed was hospitalized at Henry Medical Center from January 9, 2002, to January 20, 2002, during which time he was treated by Muhanna for deep venous thrombosis in his right leg. He was transferred to Emory University Hospital after his condition worsened.

In June 2002, Zahler called Muhanna, told him that he was representing Speed in the premises liability case against Sports Authority, and asked Muhanna if he could depose him as Speed's treating physician in that case. When Muhanna wanted assurance that the action in which he was to be deposed was not a medical malpractice case, Zahler assured him that the case was against Sports Authority and not a medical malpractice case. Muhanna asked Zahler to put that assurance in writing.

On August 27, 2002, Zahler sent to Muhanna a letter, confirming that he would be taking his deposition on September 10, 2002, and that he would be meeting with him to discuss the case prior to taking the deposition. Zahler's letter also confirmed "that the subject matter of the deposition will be the care and treatment provided by you and Henry Medical Center in connection with Mr. Speed's medical condition. This is not a medical malpractice case *and neither now or in the future will you be subject to any type of malpractice claim.*" (Emphasis supplied.)

Thereafter, Muhanna met with Zahler and gave his deposition as scheduled on September 10, 2002. During the deposition, Muhanna was questioned about his care and treatment of Speed during his January 2002 hospitalization at Henry Medical Center, as well as about any causal connections between Speed's deep venous thrombosis and his prior foot injury at Sports Authority.

[2] *State Farm Fire &c. Co. v. Goodman*, 259 Ga. App. 62, 63 (1) (576 SE2d 49) (2002).

On January 8, 2004, using new counsel other than Zahler, Speed filed a medical malpractice suit against Muhanna alleging professional negligence in his care and treatment of Speed at Henry Medical Center. Muhanna filed an answer in which he asserted as a defense, among other things, that Speed had previously released any malpractice claim he might have against Muhanna and was thus barred from recovery in the action. On December 3, 2004, the trial court granted Muhanna's motion for summary judgment as to Speed's claim of medical malpractice on the ground that Zahler's August 27, 2002 letter to Muhanna was a release of that claim.[3] This appeal followed.

1. Speed argues that Zahler had no authority to release his claim against Muhanna. Speed points out that he retained Zahler to represent him in his premises liability case against Sports Authority, but never hired Zahler to pursue a medical malpractice claim against Muhanna; thus, Zahler had no authority to release the medical malpractice claim against Muhanna. We disagree.

As an initial matter, it appears that Zahler had been given actual authority to release Speed's claims against Muhanna. In this case, Muhanna was contacted by Zahler, who represented Speed in his personal injury claims arising out of the incident which resulted in his injured foot. The only action pending at the time of contact was against Sports Authority. Zahler was authorized to investigate and pursue *"any and all* claims which [Speed] may have against Sports Authority, and *any other Defendants later named or identified,* as a result of"* the incident at Sports Authority, and was making inquiries regarding Muhanna's care and treatment of Speed prior to a severe deterioration in his medical condition. As Speed's attorney, Zahler had authority to obtain Muhanna's deposition testimony in exchange for payment as an expert witness or some other bargained-for exchange, such as a covenant not to sue or a release. When Muhanna expressed his reluctance to be deposed, Zahler assured Muhanna that "neither now or in the future [would he] be subject to any type of malpractice claim." At no time did Zahler communicate to Muhanna any restrictions on his authority to act on Speed's behalf. Thus, Zahler had actual authority to negotiate with Muhanna on Speed's behalf.

Furthermore, even if he had not had actual authority to negotiate with Muhanna on Speed's behalf, Zahler had apparent authority to do so. Uniform Superior Court Rule 4.12 provides that "[a]ttorneys of record have apparent authority to enter into agreements on behalf

---

[3] In the same order, the trial court denied Muhanna's motion for summary judgment as to Mrs. Speed's claim of loss of consortium.

of their clients in civil actions." There is no dispute that, at the time Zahler contacted Muhanna about being deposed and for some time thereafter, Zahler was attorney of record for Speed and was authorized to represent him "in connection with *any and all* claims which [Speed] may have against Sports Authority, and *any other Defendants, later named or identified* as a result of an incident which occurred on February 14, 1999." (Emphasis supplied.)

> Under Georgia law an attorney of record has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties. This authority is determined by the contract between the attorney and the client and by instructions given the attorney by the client, and in the absence of express restrictions the authority may be considered plenary by the court and opposing parties. The authority may be considered plenary unless it is limited by the client and that limitation is communicated to opposing parties. Therefore, from the perspective of the opposing party, in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client, and the client will be bound by the acts of his attorney within the scope of his apparent authority. The client's remedy, where there have been restrictions not communicated to the opposing party, is against the attorney who overstepped the bounds of his agency, not against the third party.

(Citations omitted.) *Brumbelow v. Northern Propane Gas Co.*[4] Thus, "under *Brumbelow, whether or not an action is pending in court,* an attorney who has an attorney-client relationship with a party has apparent authority to enter into an agreement on behalf of his client and the agreement is enforceable against the client by other settling parties." (Emphasis supplied.) *Pembroke State Bank v. Warnell.*[5] "[A]n attorney may bind his clients outside the context of formal litigation and this may be done by letter agreement, as here." *White v. Orr Leasing, Inc.*[6]

In this case, Zahler was representing Speed in the premises liability case against Sports Authority. Zahler's authority from Muhanna's perspective was plenary, and Zahler had apparent authority

---

[4] *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674, 675 (2) (308 SE2d 544) (1983).

[5] *Pembroke State Bank v. Warnell*, 266 Ga. 819, 823 (4) (471 SE2d 187) (1996).

[6] *White v. Orr Leasing, Inc.*, 210 Ga. App. 599, 601 (1) (436 SE2d 693) (1993).

to elicit the cooperation and alliance of other potential defendants by giving assurances that no claim would be brought against them. Speed is bound by Zahler's acts within the scope of that apparent authority. *Brumbelow*, supra. It is clear under the employment agreement that Zahler was authorized to file suit against Muhanna, and had similar authority to release such claim as the court found.

The facts of this case are similar to those in *White v. Orr Leasing, Inc.*, supra. In that case, counsel for the plaintiffs sent a letter to the liability insurance carrier for the defendants in which he stated, " 'our clients (plaintiffs) will not be making any claim against [defendants]. In return, you have agreed to make your investigator, Mr. Ty Dedman, available to us for an interview concerning the cause of the accident and possible theories of liability with respect to other third parties.' " Id. at 600. The attorney did question the investigator and the suit was dismissed without prejudice pursuant to a covenant not to sue. In a subsequent suit against the defendants, the trial court granted summary judgment to the defendants on all the plaintiffs' claims based on the covenant not to sue. On appeal, plaintiffs argued that their attorney had been employed to pursue the claims for personal injuries but had not been authorized to discharge any claims. We affirmed the trial court's grant of summary judgment, agreeing "that plaintiffs were estopped to deny the attorney's authority and that they had received the benefits of the agreement by interviewing the investigator." Id. at 601 (1). We went on to state:

> The rule that a principal is liable for the contracts of his agent applies even though the agent, in contracting, acts in his own interests and adversely to his principal, where the party with whom the agent contracts has no knowledge of the agent's derelictions and is not cognizant of any fact charging him with knowledge thereof. The principal, having selected the representative and vested him with apparent authority, should be the loser in such case, and not the innocent party who relied thereon. Despite plaintiffs' argument to the contrary, an attorney may bind his clients outside the context of formal litigation and this may be done by letter agreement, as here.

(Citations and punctuation omitted.) Id. The same reasoning applies here. Speed received the benefits of the agreement by deposing Muhanna and is estopped to deny Zahler's authority to release Muhanna from liability.

In making this ruling, we are mindful that this Court previously has raised concerns about the harshness of a

doctrine binding a client to a settlement he did not authorize. . . . However, the rule outlined in *Brumbelow* focuses on the interests of opposing parties and puts the burden of communicating any limitation of an attorney's authority on the party seeking to disavow the settlement. The client's remedy, where there have been restrictions not communicated to the opposing party, is against the attorney who overstepped the bounds of his agency, not against the third party. Therefore, we are bound by *Brumbelow*, as well as general principles of agency law, to hold that where an opposing party has not received notice that an attorney's authority has been terminated, or otherwise limited, he may rely upon the attorney's apparent authority to bind his client.

(Citations and punctuation omitted.) *Clark v. Perino.*[7]

2. Speed argues on several grounds that the trial court erred in granting summary judgment to Muhanna because Zahler's letter to Muhanna cannot constitute a release under Georgia law. We find no merit to any of these arguments.

(a) Speed first maintains that the Zahler letter was not a release because it does not contain the essential terms of the agreement and is thus unenforceable. We disagree.

While an agreement may be oral, if the parties disagree on whether an agreement was reached, the agreement must be memorialized in a writing to be enforceable, and the absence of a writing prevents enforcement. This requirement of a writing goes to the certainty that an agreement exists and to the certainty of the terms of the agreement. The writing which will satisfy this requirement ideally consists of a formal written agreement signed by the parties. However, letters or documents prepared by attorneys which memorialize the terms of the agreement reached will suffice.

(Citations and punctuation omitted.) *Moreno v. Strickland.*[8]

Attorney Zahler's letter to Muhanna constituted such a writing. Muhanna had expressed reluctance to be deposed, especially without counsel, if he would be doing so in a medical malpractice case, and asked Zahler for assurances that he would not be involved in such a case. In return for Muhanna's agreement to testify about the care and

[7] *Clark v. Perino*, 235 Ga. App. 444, 449 (2) (509 SE2d 707) (1998).

[8] *Moreno v. Strickland*, 255 Ga. App. 850, 852-853 (1) (567 SE2d 90) (2002).

treatment of the deep venous thrombosis in Speed's right leg, Zahler sent the letter of August 27, 2002, which sets out the terms of the agreement between Muhanna and Zahler. By the express terms of the letter, Zahler confirmed that Muhanna had agreed to appear for a deposition on September 10, 2002, meet with Zahler prior to the taking of the deposition, and discuss the care and treatment he had provided to Speed. In return, Muhanna was promised that "[t]his is not a medical malpractice case and neither now or in the future will you be subject to any type of malpractice claim." As the trial court found, this letter was a complete and enforceable agreement.

(b) Speed next contends that the release is unenforceable because there was no meeting of the minds between Zahler and Muhanna with respect to the release. Specifically, Speed points to an affidavit filed by Zahler in which he stated that the purpose of his letter of August 27, 2002, to Muhanna "was not to release Dr. Muhanna, but was meant simply to confirm that the Sports Authority case was not a medical malpractice case and that Mr. Speed was not filing any type of claim against him in that case." This contention is meritless.

"Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Such a contract is the only evidence of what the parties intended and understood by it. Parol evidence is not admissible to contradict or construe an unambiguous contract." (Citations and punctuation omitted.) *Frank v. Fleet Finance, Inc. of Ga.*[9] In this case, the release in Zahler's letter is clear and unambiguous. The plain language of the letter assures Muhanna that the case "is not a medical malpractice case and neither *now or in the future* will you be subject to *any type* of malpractice claim." (Emphasis supplied.) Zahler is an attorney, and if he had meant to limit the release only to Muhanna's not being made a defendant in the Sports Authority case, he could have done so. However, he did not, and parol evidence is inadmissible to modify the plain language of his letter to Muhanna. *Heath v. Boston Capital Corporate Tax Credit Fund VIII.*[10]

(c) Speed also argues that the letter was not an enforceable agreement because there was no consideration from Muhanna for his agreement with Zahler. We disagree.

"Insofar as consideration is concerned, a release is a surrender of a cause of action which may be gratuitous or given for an inadequate

---

[9] *Frank v. Fleet Finance, Inc. of Ga.*, 227 Ga. App. 543, 546 (1) (b) (489 SE2d 523) (1997).

[10] *Heath v. Boston Capital Corporate Tax Credit Fund VIII*, 253 Ga. App. 537, 539 (1) (559 SE2d 743) (2002).

consideration." *Philips Audio Video Systems Corp. v. Bateman.*[11] In this case, Speed considered it in his interest, in pursuit of his action against Sports Authority, to depose Muhanna concerning his medical condition, care and treatment, and any causal relationship between the injury he sustained at the Sports Authority store and his later severe medical complications. In return for the release, Muhanna met with Zahler prior to the deposition and voluntarily testified at length in a matter in which his testimony could expose him to suit. Such testimony was good and valuable consideration for the release.

3. In light of our determination in Divisions 1 and 2 that Zahler's letter constituted an enforceable release and that Speed was bound by that release, we need not address Speed's remaining arguments. *Capitol Materials v. Kellogg & Kimsey, Inc.*[12] (" '[i]f the requirement of consideration is met, there is no additional requirement of a gain, advantage, or benefit to the promisor or of a loss, disadvantage, or detriment to the promisee' ").

*Judgment affirmed. Miller and Bernes, JJ., concur.*

DECIDED JULY 22, 2005 —
RECONSIDERATION DENIED AUGUST 8, 2005 — ▬▬▬

*Cash, Krugler & Fredericks, Andrew B. Cash, David N. Krugler, Charles A. Mathis, Jr.,* for appellant.

*Carlock, Copeland, Semler & Stair, Wade K. Copeland, Courtney A. Buxton,* for appellee.

---

[11] *Philips Audio Video Systems Corp. v. Bateman,* 160 Ga. App. 12, 14 (285 SE2d 747) (1981).

[12] *Capitol Materials v. Kellogg & Kimsey, Inc.,* 242 Ga. App. 584, 585 (1) (530 SE2d 488) (2000).