A07A1732. BEASLEY et al. v. NORTHSIDE HOSPITAL, INC.
(658 SE2d 233)

JOHNSON, Presiding Judge.

Sheral Beasley suffered permanent nerve damage after undergoing carotid endarterectomy surgery at Northside Hospital. He filed a medical malpractice action against the hospital and the physician who performed the surgery. He appeals from the grant of summary judgment to the hospital. For the reasons that follow, we affirm.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1] A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.[2]

When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion.[3] Further, any doubts on the existence of a genuine issue of material

---

[9] See *Austin v. State*, 286 Ga. App. 149, 155, n. 6 (648 SE2d 414) (2007).

[10] See Court of Appeals Rule 40 (b).

[11] See *Austin*, supra.

[1] OCGA § 9-11-56 (c).

[2] *Anthony v. Chambless*, 231 Ga. App. 657, 658 (1) (500 SE2d 402) (1998).

[3] *Speed v. Muhanna*, 274 Ga. App. 899 (619 SE2d 324) (2005).

fact are resolved against the movant for summary judgment.[4] When this Court reviews the grant or denial of a motion for summary judgment, it conducts a de novo review of the law and the evidence.[5]

Construing the evidence most favorably to Beasley as respondent on summary judgment, it shows that he underwent carotid endarterectomy surgery in order to have plaque removed from his carotid artery. Dr. Mark Rheudasil performed the surgery. The procedure involved making an incision in Beasley's neck, separating the artery from the surrounding tissue, making an incision in the artery, and removing plaque that was blocking the free flow of blood to the brain.

As the surgery progressed, Dr. Rheudasil saw that plaque extended higher toward Beasley's head than he anticipated. He extended the procedure further up the blood vessel toward the base of the skull, performing the procedure on three sections of the artery instead of one. In so doing, he ventured into an anatomic area where the surgery was done "blindly," thereby placing the cranial nerves that control swallowing in jeopardy of injury. Dr. Rheudasil could not determine visually if he had removed enough plaque to restore the free flow of blood, so he decided to perform an arteriogram before concluding the surgery. That procedure required the taking of an x-ray.

A portable x-ray machine was brought into the operating room. In order to take the x-ray, the operating room table and mattress upon which Beasley was lying had to be tilted. The mattress had not been secured to the table. When the table was tilted, Beasley began to slide off of it. The staff was able to catch Beasley and prevent him from falling to the floor, but not before he slid more than eight inches beyond the edge of the table. An anesthesiologist supported his head while staff placed his body back onto the table. Beasley's breathing tube became disconnected during the incident. Metal retractors had been in place to keep the skin separated during the procedure and a needle had been placed in his carotid artery, and they may have still been in place at the time of the incident. After the surgery, Beasley was found to have sustained damage to his cranial nerves, which caused severe permanent respiratory and swallowing problems.

In the medical malpractice action filed against Dr. Rheudasil and the hospital, Beasley alleged Dr. Rheudasil was negligent in the manner in which he performed the surgery, and the hospital was negligent in failing to provide proper operating room equipment and/or properly securing him before tilting the operating table.

---

[4] Id. at 899-900.
[5] Id. at 900.

Beasley attached to the complaint an expert affidavit from Dr. James Dennis averring that Dr. Rheudasil breached the standard of care in the manner in which he performed the surgery, that the injuries were "proximately caused by the surgical procedure," that the hospital was negligent for failing to provide proper equipment in the operating room "which allowed the mattress to slide from the table," that the hospital's failures "caused and contributed to" the injuries, and that the failures of Dr. Rheudasil and the hospital "contributed to and proximately caused" Beasley's injuries.

On deposition, Dr. Dennis stated that injury to a cranial nerve is a known complication of a carotid endarterectomy procedure. Dr. Dennis testified that Dr. Rheudasil went further up the artery than was safe, since a surgeon cannot see what he is doing in that area. According to Dr. Dennis, the operation "was performed in such a way that it could not be done safely, so thus resulting in the cranial nerve injury." Dr. Dennis testified that the nursing staff normally checks to make sure a patient is secured to the table. When asked whether the injuries Beasley sustained resulted from the slide off of the operating table, Dr. Dennis remarked that the sliding "*could* have played a role." And when asked whether "to a reasonable degree of medical probability" the sliding incident played *any* role in Beasley's outcome, Dr. Dennis opined that it was "less likely than the way the procedure was performed." Dr. Dennis also testified that where there is a "major disruption of the [operative] field," such as where the "patient's entire body moved so that it was no longer draped in a sterile field," the movement "*could* have caused the retractors or the needle still in the field to have injured the nerve."

Dr. Rheudasil stated on deposition that he could not say that the sliding incident played no part in the injuries, and that the sliding was a "possible" explanation. When asked if the sliding event was "an equally likely explanation" for the injuries as was the surgical procedure, Dr. Rheudasil replied that the injuries were "probably more likely" due to the "high dissection" he performed, although he did not know.

The hospital moved for summary judgment arguing that Beasley failed to show within a reasonable degree of medical probability or reasonable medical certainty that its acts proximately caused the injuries. It urged that Beasley's own expert witness stated on deposition that the sliding incident, which was Beasley's sole basis for his claim against the hospital, *could* have caused the injuries, but that it was less likely the cause than the manner in which Dr. Rheudasil performed the surgery, and pointed to Dr. Rheudasil's similar testimony.

Beasley appeals from the grant of summary judgment to the hospital, pointing to Dr. Dennis' affidavit and deposition testimony

and urging that expert testimony suggesting that the surgical procedure was the "more likely" cause of his injury does not absolve the hospital of its liability as a joint tortfeasor.[6]

In a medical malpractice case, the plaintiff must present expert medical testimony establishing that the defendant's negligence either proximately caused or contributed to his injuries.[7] Using his specialized knowledge and training, the expert's role is to present a *realistic assessment of the likelihood* that the defendant's alleged negligence caused the plaintiff's injuries.[8] In presenting an opinion on causation, the expert is required to express some basis for both the confidence with which his conclusion is formed, and the probability that his conclusion is accurate.[9] While perhaps nothing in medicine is absolutely certain, the law intends that if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment.[10] The expert testimony must provide a causal connection that is more than mere chance or speculation.[11] The opinion must show as an evidentiary threshold that the opinion regarding causation is based, at the least, on the determination that "there was a reasonable probability that the negligence caused the injury."[12] The expert can meet the causation requirement by stating, for example, that the only apparent cause of the plaintiff's injuries was the defendant's action, by presenting overwhelming testimony of experience that, in the absence of the alleged negligence, the patient's condition could have been prevented from worsening,[13] or by stating that the injuries "could have been avoided" in conjunction with a

---

[6] Contrary to the hospital's argument, Beasley did not waive his argument that the expert's affidavit should be considered on appeal in determining whether the hospital is entitled to summary judgment. The grant of summary judgment is authorized only when there is no remaining genuine issue of material fact and the movant is entitled to judgment as a matter of law. See *Dental One Assoc. v. JKR Realty Assoc.*, 269 Ga. 616, 617 (1) (501 SE2d 497) (1998). It is the evidence of record, not the assertions and objections made by counsel at the hearing, that determines the validity or invalidity of the grant of summary judgment. Id. Thus, Beasley is entitled to point to evidence of causation contained in the record to support reversing the grant of summary judgment, even if he did not "object" on that precise basis in the trial court. See id. at 618 (1); *Falanga v. Kirschner & Venker*, 286 Ga. App. 92, 97 (1) (b) (648 SE2d 690) (2007).

[7] *Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862) (2003).

[8] Id. at 500-501.

[9] Id. at 501.

[10] Id.

[11] Id.

[12] Id.

[13] Id. at 501-502.

specific explanation regarding what precautions should have been taken by the defendant and a statement that the failures proximately caused the injuries.[14]

On the other hand, the expert's testimony does not satisfy the causation requirement where, for example, he testifies that the negligence "may have contributed" to the injuries and there were other possible causes not attributable to the defendant,[15] that the failure to take x-rays "could" lead to infection,[16] or that the administration of a drug "may have contributed" to the plaintiff's injuries.[17]

A plaintiff must show that the purported violation or deviation is the proximate cause of the injuries sustained.[18] He must prove that the injuries complained of proximately resulted from such want of care or skill.[19] A bare possibility of such result is not sufficient.[20] There can be no recovery where there is no showing to any reasonable degree of medical certainty that the injuries could have been avoided.[21] The expert need not use the magic words "reasonable degree of medical certainty,"[22] but the facts in the record must be sufficient to meet the legal standard embodied in those "magic words."[23]

In this case, the record shows that the expert medical testimony establishes only the possibility that any negligence of the hospital caused or contributed to the nerve damage. Beasley's expert acknowledged that the surgery carries with it the risk of cranial nerve damage. He also testified that the sliding incident was less likely the cause than the manner in which the surgery was performed. The conclusory statements in his affidavit — that the sliding "caused and contributed to" the injuries, and that the sliding and the surgical procedure "contributed to and proximately caused" the injuries — are simply not sufficient to create a genuine issue of material fact. They include no assessment of the likelihood that the hospital's alleged negligence caused Beasley's injuries, no basis for the expert's conclusion, and no expression of probability that the expert's conclusion is

---

[14] *Allen v. Family Med. Center*, 287 Ga. App. 522, 524-525 (1) (652 SE2d 173) (2007).

[15] *Cannon v. Jeffries*, 250 Ga. App. 371, 373 (1) (551 SE2d 777) (2001).

[16] *Renfroe v. Arrington*, 238 Ga. App. 470, 476 (2) (519 SE2d 3) (1999).

[17] *Estate of Patterson v. Fulton-DeKalb Hosp. Auth.*, 233 Ga. App. 706, 710 (2) (505 SE2d 232) (1998).

[18] See *Allen*, supra at 524 (1).

[19] Id.

[20] Id.

[21] Id.

[22] Id.

[23] See *Bushey v. Atlanta Emergency Group*, 179 Ga. App. 827, 829 (348 SE2d 98) (1986); see also *Traylor v. Moyer*, 199 Ga. App. 112, 113 (1) (404 SE2d 320) (1991) (expert not required to make explicit conclusory pronouncements or use precise language, but he must state particulars establishing prima facie case of negligence for plaintiff to survive summary judgment).

accurate.[24] Beasley's medical expert could not form an opinion with sufficient certainty so as to make a medical judgment, so there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment.[25] A plaintiff cannot prevail on motion for summary judgment by merely presenting a conclusory opinion that the defendant was negligent.[26] A bare conclusion does not create a genuine issue of material fact.[27]

Where, as here, the expert testimony indicates that the causal connection is something less than reasonable medical probability, it is insufficient to render the defendant liable.[28] While expert testimony may state a "possibility" of causation, it suffices only when it is accompanied by other evidence that, in totality, shows causation.[29]

Thus, even giving Beasley the benefit of all reasonable doubt, and construing the evidence and all inferences and conclusions in his favor, the expert testimony presented fails to establish to a reasonable degree of medical certainty or probability that the sliding incident was the proximate cause or even a contributing cause of Beasley's nerve injuries. The trial court did not err in so holding and in granting summary judgment to the hospital.[30]

*Judgment affirmed. Phipps and Bernes, JJ., concur.*

DECIDED FEBRUARY 21, 2008 

*A. Russell Blank*, for appellants.

*Sommers, Scrudder & Bass, Susan V. Sommers, Matthew P. Lazarus, Kankindi Rwego, Owen, Gleaton, Egan, Jones & Sweeney, Frederick N. Gleaton*, for appellee.

---

[24] See *Zwiren*, supra at 501.

[25] Id.

[26] See *Traylor*, supra.

[27] Id.

[28] *Estate of Patterson*, supra at 709; see also *Grantham v. Amin*, 221 Ga. App. 458, 458-459 (471 SE2d 525) (1996) (" 'significant contributing cause' " insufficient to establish causation).

[29] *Estate of Patterson*, supra at 710.

[30] See *Cannon*, supra.