**FIFTH DIVISION
DILLARD, P. J.,
REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 6, 2017**

# In the Court of Appeals of Georgia

A16A1759. SWINT et al. v. MAE et al.

BETHEL, Judge.

Fritz and Melissa Swint ("Plaintiffs") brought a medical malpractice action against multiple medical providers[1] including Tonya Mae, M.D. ("Dr. Mae") and Pamela Roy, R.N. ("Nurse Roy") (collectively, the "Defendants"), alleging the doctors and nurse breached the standard of care owed to Mr. Swint in failing to correctly position and/or reposition him prior to and during surgery, which resulted in permanent injury to his right arm. Defendants moved for summary judgment on the grounds that Plaintiffs failed to present sufficient evidence of causation. After

---

[1] Defendants Paul Alphonse, Jr. M.D., F.A.C.S. ("Dr. Alphonse") and Midtown Urology, P.C. remain defendants and are not participants in this appeal.

arguments, the trial court entered an order granting summary judgment to Defendants,[2] and this appeal followed.

Plaintiffs argue the trial court erred by holding that there was no evidence in the record that Defendants proximately caused any injury to Mr. Swint, by mischaracterizing Plaintiffs' causation expert's testimony, and by misapplying the standard for medical causation. We disagree and affirm for reasons explained below.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Anthony v. Chambless*, 231 Ga. App. 657, 658 (1) (500 SE2d 402) (1998). "A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." *Id*. (citations and emphasis omitted). "Further, any doubts on the existence of a genuine issue of material fact are resolved against the movant[.]" *Knight v. Roberts*, 316 Ga. App. 599, 601 (730 SE2d 78) (2012). "On appeal from a

---

[2] The transcript from the June 3, 2015 hearing was not included as part of the record on appeal.

grant of a motion of summary judgment, we review the evidence de novo . . . to determine whether the trial court erred in concluding that no genuine issue of fact remains and the moving party is entitled to judgment as a matter of law." *Allen v. Family Med. Ctr., P.C.*, 287 Ga. App. 522, 522 (652 SE2d 173) (2007).

So viewed, the evidence shows that on December 3, 2009, Mr. Swint underwent a surgical procedure known as a robotic-assisted laparoscopic prostatectomy ("RALP") performed by Dr. Alponse and proctored[3] by Dr. Raymond Pak ("Dr. Pak"). Tonya Mae, M.D. was the attending anesthesiologist and Pamela Roy was the circulating nurse during the surgery. The RALP procedure required Mr. Swint to be positioned in the lithotomy in a steep Trendelenburg[4] position, with his left and right arms tucked to his side. Drs. Alphonse and Pak positioned Mr. Swint's body using Dr. Pak's method of wrapping the patient's body with sheets and towel clips, without the assistance of Dr. Mae and Nurse Roy. Once Mr. Swint was positioned by Drs. Alphonse and Pak, Dr. Mae tilted the operating table into the steep

---

[3]A proctor is a surgeon who is trained on a device and provides instruction on the use of the device.

[4] This is a position in which the patient's head is low and the body and legs are on an elevated and inclined plane. This may be accomplished by having the patient lie flat on a bed and then elevating the foot of the bed. The head is positioned below the patient's pelvis at an angle greater than 30 degrees.

Trendelenburg position to the level approved by the surgeons. The surgery, conducted by Dr. Alphonse, lasted approximately 9 hours and 21 minutes. At no time during the surgery did Defendants suggest or attempt to reposition Mr. Swint's body. Mr. Swint's body remained in the same position throughout the entire procedure.

After surgery, Defendants took Mr. Swint to a post-surgery recovery room where he complained of pain in both shoulders and arms. Mr. Swint was diagnosed with compartment syndrome in his right arm the following day, and underwent surgery to relieve the pressure. Following surgery, Mr. Swint did not regain complete use of his right arm and hand.

1. Plaintiffs allege the combined negligence of Defendants and Dr. Alphonse in failing to properly position Mr. Swint's body initially and/or in failing to reposition Mr. Swint's body during the surgery is the proximate cause of his right arm injury. "To recover in a medical malpractice case, a plaintiff must show not only a violation of the applicable medical standard of care but also that the purported violation or deviation from the proper standard of care is the proximate cause of the injury sustained." *Berrell v. Hamilton*, 260 Ga. App. 892, 896 (581 SE2d 398) (2003) (citation omitted). A mere showing of negligence without proof of causation is

insufficient to withstand summary judgment. *Estate of Patterson v. Fulton-DeKalb Hosp. Auth.,* 233 Ga. App. 706, 709 (2) (505 SE2d 232) (1998).

Causation is established through expert testimony "because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge[.]" *Knight,* 316 Ga. App. at 604 (1) (a) (quoting *Zwiren v. Thompson,* 276 Ga. 498, 500 (578 SE2d 862) (2003)). The expert must state his or her opinion regarding proximate causation in terms stronger than that of medical possibility — e.g., a reasonable degree of medical certainty or reasonable medical probability. *Knight,* 316 Ga. App. at 604 (1) (a). The use of the magic words "reasonable degree of medical certainty" is not required and causation may be established by linking the testimony of several different experts. *Allen,* 287 Ga. App. at 524; *see also Knight*, 316 Ga. App. at 607 (1) (a). This means that Plaintiffs were required to present expert testimony that showed to a reasonable degree of medical certainty that Defendants' failure to adhere to the applicable standard of care caused Mr. Swint's injury. Plaintiffs failed to do so, and Defendants were entitled to judgment as a matter of law.

In support of their causation argument, Plaintiffs proffered the medical expert testimony of Drs. Kenneth Rosenfeld and Michael Palese. Dr. Rosenfeld testified that

5

he was uncertain as to what led to Mr. Swint's injury and that it could have been the initial positioning, the length of surgery, or both. He could not say at what point during the surgery the injury developed. Dr. Rosenfeld conceded that nothing in the medical report indicated there was any violation of the standard of care with respect to the initial positioning of Mr. Swint, however he believes that mal-positioning, mis-positioning, or failure to reposition — one or a combination of those reasons — caused the injury and directly relates to the shared responsibilities of the parties. Dr. Rosenfeld opined that Defendants breached their respective duties by failing to "[i]nsist with the team in the operating room that the patient be repositioned[,]" and that "had the anesthesiologist insisted that the patient be taken out of the position that they [sic] were in for such a long period of time, that this injury [compartment syndrome] may very well have been and probably would have been either avoided or lessened to some degree[.]" For Dr. Rosenfeld, Mr. Swint's development of compartment syndrome informed his opinion that there was a positioning problem.

Plaintiffs also point to the deposition testimony of Dr. Palese who believes Mr. Swint began developing compartment syndrome approximately four to five hours into the surgery. Dr. Palese testified that Mr. Swint was initially positioned in a manner which caused pressure on the upper extremities in such a way that more likely than

6

not contributed to Mr. Swint's development of compartment syndrome. Furthermore, Dr. Palese testified that positioning is one factor that can contribute to the development of compartment syndrome, but that it is possible for the condition to occur following a RALP absent a deviation from the standard of care. Dr. Palese criticized only the length of the procedure, but conceded that repositioning a patient does not eliminate positional injuries, as Mr. Swint could have developed compartment syndrome prior to repositioning. Dr. Palese did not opine as to Dr. Mae or Nurse Roy's care.[5] Both experts testified that they had never read anything about repositioning a patient simply because of the length of the procedure, were not aware of any medical literature prior to 2010 that directly advocated repositioning patients undergoing a robotic-assisted procedure in the steep Trendeleburg position, and were not familiar with any literature or statistics on the amount or degree by which the risk of developing compartment syndrome is lessened when a patient is repositioned.

The trial court found the experts' causation testimony legally insufficient to establish that Defendants caused Mr. Swint's injury. "In presenting an opinion on causation, the expert is required to "express some basis for both the confidence with which his conclusion is formed, and the probability that his conclusion is accurate."

---

[5] Dr. Palese only testified as to Dr. Alphonse's care.

7

*Zwiren,* 276 Ga. at 501 (citation omitted). The expert also meets this requirement by stating that the *only apparent cause* of the plaintiff's injury was the defendant's action, *Killingsworth v. Poon,* 167 Ga. App. 653, 657 (307 SE2d 123) (1983); or if the expert presents "overwhelming" testimony of experience that, in the absence of the alleged negligence, the patient's condition could have been prevented from worsening. *Lee v. Satilla Health Svcs.,* 220 Ga. App. 885, 888 (2) (470 SE2d 461) (1996).

As it relates to Mr. Swint's initial positioning, neither expert opined to any degree of medical certainty that the initial positioning caused the injury.[6] At best, Dr. Rosenfeld opined that the initial positioning *in some likelihood contributed* to the injury, but could not say how much it contributed. Further, both Dr. Rosenfeld and Dr. Palese conceded that there was nothing in Nurse Roy's report that indicated there was any violation of the standard of care with respect to the initial positioning of Mr. Swint. This Court has previously found expert testimony alleging that a defendant's negligence "may have contributed" to the injury insufficient to withstand summary judgment. *See Cannon v. Jeffries,* 250 Ga. App. 371, 372 (1) (551 SE2d 777) (2001)

---

[6] Dr. Palese opined initial positioning "more likely than not" caused the injury and Dr. Rosenfeld was uncertain whether it was the initial positioning, the length of surgery, or both caused the injury.

(summary judgment affirmed where expert testified the defendant's negligence "may have contributed" to the injury but conceded that the injury may have possibly been caused by other sources not attributable to the defendants); *see also Anthony,* 231 Ga. App. at 659 (1) (a "bare possibility" of causing the injury complained of is not sufficient proof of causation as a matter of law); *Zwiren*, 276 Ga. at 501 ("Expert testimony that it was more likely that there was a possibility that the injury could have been avoided does not provide the necessary basis for the expert's opinion on proximate cause." (citation and punctuation omitted))*; Patterson,* 233 Ga. App. at 708 (2) (the expert's testimony must be "a realistic assessment of the likelihood that the alleged negligence caused the injury"). We agree that the combined testimony of the experts does not create a genuine issue of fact that Mr. Swint's initial positioning caused the injury.

With respect to repositioning, even if Plaintiffs had proven Defendants were negligent for failing to insist on repositioning, Plaintiffs were also required to show causation by more than a mere possibility that such insistence by Defendants would have avoided the injury. *Bowling v. Foster,* 254 Ga. App. 374, 378 (1) (a) (562 SE2d 776) (2002) ("Negligence alone is insufficient to sustain recovery. It must be proven that the injury complained of proximately resulted from a want of care or skill."

9

(citation and punctuation omitted)). Dr. Rosenfeld's opinion omits the causal link necessary to show that Defendants' insistence that Mr. Swint be repositioned would have changed the outcome. *Hudson v. Swain,* 282 Ga. App. 718, 721 (639 SE2d 319) (2006) ("No matter how negligent a party may be, if his act stand in no causal relation to the injury it is not actionable." (citation omittied)). Instead, Plaintiffs argue a jury can infer that Defendants' failure to insist on repositioning caused the injury. We disagree.

To withstand summary judgment, Plaintiffs were required to come forward with some evidence showing a causal link between each Defendant's negligence and Mr. Swint's injury and did not do so.[7] *See Allstate Ins. Co. v. Sutton,* 290 Ga. App. 154, 159-60 (3) (b) (658 SE2d 909) (2008); *Magnan v. Miami Aircraft Support, Inc.,* 217 Ga. App. 855, 857 (2) (459 SE2d 592) (1995). We agree with the trial court that Plaintiffs failed to present sufficient evidence of causation.

---

[7] Plaintiffs' rely on *Walker v. Giles* to support their concurrent negligence argument that each medical provider — Dr. Alphonse and Defendants — is equally culpable for the action and inaction of the other. 276 Ga. App. 632 (624 SE2d 191) (2005). However, *Walker* makes clear that it is still the responsibility of Plaintiffs to provide evidence of causation for each tortfeasor, which can be achieved through expert testimony. *Id*. at 644-47.

2. Plaintiffs also argue the trial court misapplied the standard for medical causation by requiring Plaintiffs' expert to speculate on what Dr. Alphonse may have done had Defendants insisted that Mr. Swint be repositioned.[8] Plaintiffs misunderstand the trial court's order. How Dr. Alphonse may have responded to Defendants' insistence is immaterial to whether Plaintiffs presented sufficient evidence to show that Defendants' failure proximately caused Mr. Swint's injury.[9] The trial court need only find the experts' testimony regarding causation to be less than a reasonable medical probability in order to find it insufficient to render the Defendants liable. *Beasley v. Northside Hosp., Inc.,* 289 Ga. App. 685, 689-90 (658 SE2d 233) (2008).

Here, the trial court determined Dr. Rosenfeld's causation testimony amounted to a conclusory and speculative opinion – "actually, [a] guess." The trial court further concluded that Dr. Rosenfeld's testimony regarding Dr. Mae was not based on sufficient facts or data and fell short of the requirements established under OCGA §

---

[8] Plaintiffs' point to the trial court's example that "if A had insisted that B do something B probably would have done it (and that that would have avoided or lessened something else)" in support of their argument.

[9] There can be no recovery "where there is no showing to any reasonable degree of medical certainty that the injury could have been avoided." *Anthony,* 231 Ga. App. at 659 (citation omitted).

11

24-7-702 (b).[10] "[W]hen the basis of [an expert's] opinion is given and it appears that it is *wholly speculative or conjectural,* it must follow that his opinion is without foundation and has no probative value. Speculation and conjecture by an expert is still speculation and conjecture, and will not support a verdict." *Layfield v. Dep't of Transp.,* 280 Ga. 848, 850 (1) (632 SE2d 135) (2006) *(*citation omitted and emphasis in original).

In its order, the trial court found wholly speculative and conjectural Dr. Rosenfeld's testimony that had Defendants insisted that Dr. Alphonse reposition Mr. Swint, Dr. Alphonse would have done so, and that had he done so, Mr. Swint's injury could have been avoided or lessened. We find no error in the trial court's analysis.

*Judgment affirmed. Dillard, P. J., and Reese, J., concur.*

---

[10] The statute requires the expert's testimony to 1) be based upon sufficient facts or data; 2) be the product of reliable principles and methods; and 3) reliably apply the principles and methods to the facts of the case.