**FOURTH DIVISION
ELLINGTON, P. J.,
MERCIER and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 14, 2018**

# In the Court of Appeals of Georgia

A16A1031.  EDOKPOLOR et al. v. GRADY MEMORIAL HOSPITAL CORPORATION et al.

MERCIER, Judge.

Rose Edokpolor died at Grady Memorial Hospital on July 28, 2008. Following her death, Edokpolor's surviving relatives, Patrick Edokpolor and Linda Patrick (collectively, "appellants"), sued Grady Memorial Hospital Corporation and Shirley Singh, R. N. (collectively, "Grady"), for medical malpractice. Grady subsequently moved for summary judgment, arguing inter alia that appellants had failed to raise genuine issue of material fact as to causation. The trial court granted the motion, and appellants challenge that ruling on appeal. We affirm.[1]

---

[1] This Court originally dismissed the appeal as untimely. See *Edokpolor v. Grady Mem. Hosp. Corp.*, 338 Ga. App. 704 (791 SE2d 589) (2016). The Supreme Court of Georgia reversed our decision and remanded the case for us "to determine

1. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the non-moving party. See *Beasley v. Northside Hosp.*, 289 Ga. App. 685, 685-686 (658 SE2d 233) (2008).

So viewed, the record shows that Edokpolor, who had a history of cardiac disease and other medical complaints, was admitted to Grady Memorial Hospital on May 17, 2008. She remained hospitalized, and on June 17, 2008, Edokpolor's treating physicians determined that she needed a colonoscopy. Prior to the test, a doctor prescribed Golytely, a liquid bowel preparation medication. Although Golytely normally is taken by mouth, Edokpolor had a nasogastric-feeding tube (nose-to-stomach "NG" tube) in place, and the doctor ordered that the medication be administered through the "NG tube when started," rather than orally.

the merits of [appellants'] contention that the trial court erroneously awarded summary judgment to Grady." *Edokpolor v. Grady Mem. Hosp. Corp.*, 302 Ga. 733, 736 (808 SE2d 653) (2017). We now address appellants' substantive claims.

2

Despite this order, a Grady Hospital nurse gave the Golytely to Edokpolor by mouth throughout the day on June 17, 2008. At some point Edokpolor aspirated, resulting in a "code blue" that evening. Edokpolor died six weeks later. The death certificate listed "Aspiration Pneumonia" as the immediate cause of death.

Appellants sued Grady Memorial Hospital Corporation and Shirley Singh, the nurse who administered the Golytely to Edokpolor, for medical malpractice. Pursuant to OCGA § 9-11-9.1 (a), appellants attached the affidavit of Kelly Thrasher, M. D., to their complaint.[2] Thrasher testified that the applicable standard of care required Singh and other nursing personnel to "follow the doctor's orders to administer the Golytely through the NG tube rather than by mouth." He asserted that their failure to do so was negligent and breached the standard of care. And he concluded that this negligence "proximately caused the death of Rose Edokpolor."

Grady moved for summary judgment on several grounds, including that appellants failed to show that the alleged negligence proximately caused Edokpolor's death. Grady acknowledged Thrasher's causation testimony, but characterized it as

---

[2] OCGA § 9-11-9.1 (a) requires a plaintiff in a professional malpractice action "to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim."

3

unsupported, conclusory, and insufficient to raise a genuine question of material fact. The trial court agreed and granted the motion. We find no error.

"[A] plaintiff cannot recover for medical malpractice, even where there is evidence of negligence, unless the plaintiff establishes by a preponderance of the evidence that the negligence either proximately caused or contributed to cause plaintiff harm." *Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862) (2003) (citations and punctuation omitted). To meet this burden, a medical malpractice plaintiff must present expert testimony "because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson." Id. (citation omitted). Ultimately, the causation evidence must rise above mere chance, possibility, or speculation. See id. at 506. As we have explained:

> A plaintiff must show that the purported violation or deviation is the proximate cause of the injuries sustained. He must prove that the injuries complained of proximately resulted from such want of care or skill. A bare possibility of such result is not sufficient. There can be no recovery where there is no showing to any reasonable degree of medical certainty that the injuries could have been avoided.

*Beasley*, supra at 689 (footnotes omitted).

With respect to expert testimony, appellants' summary judgment response relied solely on Thrasher's OCGA § 9-11-9.1 (a) affidavit, which asserted that Edokpolor "had aspirated the Golytely," that "it had gone into her lungs," and that she died "as a direct result of the aspiration." Thrasher then concluded, with little explanation, that the nursing staff's negligent decision to administer Golytely by mouth, rather than NG tube, proximately caused Edokpolor's death by aspiration. Nothing in the record, however, indicates that Edokpolor aspirated while ingesting the medication by mouth, as opposed to after it entered her stomach. Appellants have pointed to no evidence that Edokpolor had difficulty swallowing the liquid. And Singh, who dispensed the Golytely by holding a cup from which Edokpolor sipped the medication, was not present when Edokpolor aspirated.

In contrast, Grady offered expert testimony that nausea and vomiting are know risks of Golytely, regardless of how the medication is ingested. Grady's expert, David H. Goldstein, M. D., noted from the medical records that Edokpolor was vomiting during the code blue, and he explained that "[a]spiration can occur as a result of vomiting." Goldstein further testified: "[U]sing a feeding tube to administer Golytely bowel preparation does not eliminate the risk of aspiration. Stomach content can still enter the airway via regurgitation." He concluded:

It is my medical opinion to a reasonable degree of medical certainty that Rose Edokpol[o]r would have vomited regardless of how her stomach content accumulated, whether by mouth or through an NG tube. . . . It is my medical opinion to a reasonable degree of medical certainty that on June 17, 2008, Rose Edokpol[o]r's stomach content (vomitus) refluxed back into her throat and was thereafter inhaled or aspirated into her lungs.

Thrasher's affidavit does not address the possibility that Edokpolor vomited and aspirated *after* the Golytely entered her stomach. It offers no facts linking the aspiration to oral ingestion of the medication. And it does not show, to any reasonable degree of medical certainty, that Edokpolor's death could have been avoided had Grady's nursing staff administered the Golytely via the NG tube. Simply put, Thrasher's bare and conclusory assertion that alleged negligence by Grady proximately caused Edokpolor's death does not raise a genuine issue of fact as to causation. See *Swint v. Mae*, 340 Ga. App. 480, 485 (2) (798 SE2d 23) (2017) ("Speculation and conjecture by an expert is still speculation and conjecture, and will not support a verdict."). Summary judgment for Grady, therefore, was appropriate. See *Roberts v. Nessim*, 297 Ga. App. 278, 282-283 (1) (a) (ii) (676 SE2d 734) (2009) (conclusory and unsupported expert affidavit insufficient to establish genuine issue of

6

fact as to causation in medical malpractice case); *Beasley*, supra ("There can be no recovery [in a medical malpractice action] where there is no showing to any reasonable degree of medical certainty that the injuries could have been avoided.").

2. After the trial court entered summary judgment, appellants moved for reconsideration and filed the "Supplemental Affidavit of Kelly Thrasher, M. D.," which offered new and expanded opinion testimony. The trial court refused to consider the supplemental affidavit, noting that appellants submitted it post-judgment. Appellants question this ruling on appeal. Again, we find no error.

"[I]t is the duty of each party at the hearing on the motion for summary judgment to present his or her case in full." *Patel v. Kensington Community Assn.*, 340 Ga. App. 896, 898 (1) (797 SE2d 235) (2017) (citation and punctuation omitted). Grady explicitly raised the causation issue on summary judgment, challenging the sufficiency of appellants' expert evidence and citing affidavit testimony from its own expert. In response, appellants made no effort to supplement or revise Thrasher's affidavit, choosing instead to rest on its conclusory assertions. Their belated attempt to amend that testimony did not occur until one year after Grady moved for summary judgment and following the adverse summary judgment ruling. Under these circumstances, the trial court properly refused to consider the supplemental affidavit.

See *Intl. Auto Processing v. Glynn County*, 287 Ga. App. 431, 434 (2) (651 SE2d 535) (2007) (trial court acted within its discretion in refusing to consider affidavit filed by plaintiff over 30 days after defendant moved for summary judgment and following entry of summary judgment); see also *Patel*, supra ("If [the non-moving party] had evidence that created a genuine issue of material fact and precluded summary judgment . . . , she should have presented that evidence in opposition to the motion for summary judgment, before the trial court ruled on the motion.").

*Judgment affirmed. Ellington, P. J., and Gobeil, J., concur.*