CHATTANOOGA AND CHICAMAUGA INTERURBAN RAILWAY COMPANY *v*. MORRISON, administratrix.

1. Where an instrument was propounded as a will, and a caveat thereto was filed, and pending the ensuing litigation on the issue of devisavit vel non a temporary administratrix was appointed under the Civil Code (1910), § 3938, such administratrix could file an equitable petition to enjoin a railroad company from unlawfully taking possession of a strip of land forming part of a tract left by the decedent, and constructing its road and operating the same without first acquiring the right to do so.

2. Under the evidence there was no abuse of discretion in granting an interlocutory injunction.

3. While generally at the hearing of an application for an interlocutory injunction, the testimony is introduced by means of affidavits, the rule is not inflexible, and where witnesses are present, without objection on their part, for the purpose of testifying, the presiding judge may, in his discretion, allow them to be examined orally, due care being taken that no injustice is worked thereby.

OCTOBER 15, 1913.

Injunction. Before Judge Wright. Walker superior court. June 30, 1913.

*W. H. Payne*, for plaintiff in error. *R. M. W. Glenn*, contra.

LUMPKIN, J. The Chattanooga and Chicamauga Interurban Railway Company was proceeding to construct its railway through a tract of land. Elizabeth Morrison, as temporary administratrix of Mattie Thomas, decedent, appointed under the statute, pending

litigation growing out of the propounding of an instrument as the will of the deceased and a caveat filed thereto, filed her equitable petition seeking to enjoin the defendant from further trespassing upon the land, and praying to recover a judgment for the damages already done. The defendant admitted that it was proceeding to construct its railway across the land, but denied the right of the temporary administratrix to prosecute this action. It also contended that it had entered upon the land with the consent of the heirs of the decedent, including Elizabeth Morrison, and that it had begun proceedings to condemn a right of way, but they had been suspended with the consent of such parties until the litigation in regard to the will should be concluded. It further set up estoppel by reason of expenditures incurred with the knowledge of the plaintiff.

1. The first question which arises is whether the plaintiff had the right to file a proceeding to enjoin the taking of possession of a part of the land left by the decedent and the laying of its track thereon, if the evidence justified the finding that this was unlawful. By the Civil Code (1910), § 3935, it is declared that the ordinary may at any time grant temporary letters of administration upon any unrepresented estate, for the purpose of collecting and taking care of the effects of the deceased. Section 3936 requires that a bond be given for double the amount of the personal property belonging to the estate. Section 3937 declares that a temporary administrator may sue for the collection of debts or personal property of the estate. Section 3938 provides, that, pending an issue of devisavit vel non upon any paper propounded as a will, temporary letters of administration may be granted, unless the will has already been admitted to probate in common form, and letters testamentary have been issued.

Without discussing the various forms of special administration which were permissible under the common law, it will be seen from the above summary of the provisions of our code that it is contemplated that there will be a permanent administration, but that provision is made for a temporary appointment in two instances: first, where there is an unrepresented estate; and second, pending an issue of devisavit vel non. In construing the power of an administrator so appointed, and its limitations, the purpose of the appointment is to be kept in view; and it must also be remembered that in this

State real estate as well as personalty is subject to the payment of the debts of the decedent, and may be administered for that purpose, when necessary. As early as 1858, in the case of *Johnson* v. *Brady,* 24 *Ga.* 131, it was held that "A temporary administrator, finding the assets of the estate of his intestate involved with other estates, and likely to be seized and sold, and the proceeds applied contrary to law, ought to ask an injunction until the affairs of the estate can be investigated, and conflicting claims adjusted." In *Reese* v. *Burts,* 39 *Ga.* 565, it was held that a temporary administrator might file an affidavit of illegality to an execution proceeding to sell the intestate's land. McCay, J., said: "We see no reason why the temporary administrator is not, in this State, bound to protect the real as well as the personal estate of the deceased from illegal interference. Land is assets for the payment of debts, in this State, and it is the duty of the administrator to keep it from strangers for that purpose." In *Langford* v. *Langford,* 82 *Ga.* 202 (8 S. E. 76), it was held that a temporary administrator had no right to distribute any portion of the intestate's estate, or to agree to sell and distribute the real property thereof; "nor can he interfere with the realty for any purpose except to preserve and protect it." See also *Ewing* v. *Moses,* 50 *Ga.* 264; *Mason* v. *Atlanta Fire Co.,* 70 *Ga.* 604, 607, 608 (48 Am. R. 585); *Barfield* v. *Hartley,* 108 *Ga.* 435 (33 S. E. 1010). He can not institute an action to recover land alleged to belong to the estate and held adversely thereto. *Banks* v. *Walker,* 112 *Ga.* 542 (37 S. E. 866); *Ward* v. *McDonald,* 135 *Ga.* 515 (69 S. E. 817).

It will thus be seen that while a temporary administrator can not sue to recover land held adversely to the estate, or for mesne profits thereof, or maintain similar actions, and there is a distinction between his powers in regard to realty and personalty, it has been recognized that, under certain circumstances, he may take proper action to protect and preserve real estate against unlawful seizure or sale or illegal interference. In the present case, if it be conceded that the defendant was unlawfully proceeding to enter upon the land forming a part of the estate of the decedent and to appropriate a portion of it, to the damage of the estate, without condemning it in accordance with law, who should stop such illegal action if not the temporary administratrix? If certain persons claiming to be the heirs of the deceased should apply for an in-

junction, the defendant might reply that they have no title until it has been determined that the deceased died intestate. If the persons named in the alleged will as legatees should proceed, it might be said that they had no title until the will had been probated. No permanent administrator, either with the will annexed or based on intestacy, has been appointed. If the temporary administratrix can not preserve the estate from unlawful seizure by the railroad company and use for a right of way, then it is without protection.

The case falls within the authorities above cited, so far as the preservation of the status is concerned. But so far as the petition seeks to go further and recover damages on account of what has already been done, we think it is not sustainable.

2. Having determined that the plaintiff was a proper party to institute and maintain the suit for an injunction, did the presiding judge abuse his discretion in granting it? It was contended by counsel for the defendant that all of the heirs of the decedent had agreed to allow the defendant to enter upon the land without having first condemned it, and that the defendant had begun proceedings for the purpose of condemnation, but they had been postponed until the result of the litigation in regard to the will should be known. If the will should be set aside, as it does not appear that the decedent left any children or descendants of children, her husband would be her heir. Civil Code (1910), § 3930. While there are some general expressions on the part of witnesses for the defendant that all parties in interest agreed, it does not appear that the husband of the decedent did so, or was notified of the condemnation proceedings. Again, it appears that the land in controversy was included in the residuary clause of the alleged will, and it was alleged by the plaintiff that the legacy thereunder would have to be abated in order to pay expenses of administration, funeral expenses, and the like. The agreement, on the part of the plaintiff as an individual, for the defendant to enter upon the land would not be conclusive upon her in her representative capacity, if she were not the sole beneficiary. Moreover her agreement provided that the proceeding to condemn the land should be instituted within a limited time, or the consent should go for naught. There was evidence tending to show that while it was technically begun, it was postponed by the defendant, though the plaintiff, through her husband, was asking that it proceed. If it was not a valid proceeding,

it would not meet the requirements of the agreement. If it was a valid proceeding, the defendant could not cause it to be delayed and insist on going forward with the construction and operation of its road upon the land in the meantime, although other legatees named in the will consented. Without discussing the evidence at length, there was enough to authorize the presiding judge to grant the injunction.

3. The only other point for determination is one of practice. The presiding judge, on the hearing of the application for an interlocutory injunction, over objection by counsel for the defendant, allowed certain witnesses, sworn on behalf of the plaintiff, to be examined orally, in lieu of requiring their testimony to be reduced to the form of affidavits. There was no objection by the witnesses on the ground that they could not be compelled to attend such a hearing by compulsory process; nor did any of them decline to make affidavits, so as to raise the situation provided for by the Civil Code (1910), § 5918. When such a question is raised by a witness, we will deal with it as may seem proper in the light of his objection. Here the witnesses for the plaintiff were present, and the sole objection to admitting their oral evidence came from the defendant. The defendant was permitted to cross-examine them, and did so. If it had no right to do this, it was accorded a privilege of which it can not complain. No evidence offered by the defendant by affidavit or otherwise was rejected. No application was made to require affidavits to be filed, and it does not appear that the defendant was taken by surprise, or that it asked for further time to rebut such evidence; nor was it shown that any injury was done to it. We fail to see how the defendant was hurt. Generally such hearings have been by affidavits. But there is no inviolable sanctity about an affidavit as against oral evidence. It is a matter of practice. And where the witnesses are present and not objecting, we think the presiding judge has a discretion as to whether he will hear affidavits or oral testimony. Indeed every one who has presided as a judge on the circuit bench will doubtless recognize the fact that not infrequently the truth can be reached by a few pertinent questions, though it may be beclouded and obscured in pages of carefully prepared affidavits. It requires more time to hear oral evidence; but it is more important to learn the truth than to save time. Of course the power should be justly used so as not to

entrap or work a hardship upon either party. Justice is the object to be obtained, and it should be reached by just means.

In *Boyce* v. *Burchard*, 21 *Ga.* 74, and *Hester* v. *Exley & Keller*, 130 *Ga.* 460 (60 S. E. 1053), the rejection of certain evidence was affirmed, but oral evidence and affidavits were treated on the same basis. See also 7 Enc. Ev. 1358; *Davis* v. *Covington & Macon R. Co.*, 77 *Ga.* 322; 22 Cyc. 942; Bisp. Eq. (8th ed.) 16; Civil Code (1910), § 5406; *Rogers* v. *Rogers*, 103 *Ga.* 763 (30 S. E. 659); *Robertson* v. *Heath*, 132 *Ga.* 310 (64 S. E. 73).

*Judgment affirmed. All the Justices concur.*