A09A2269. NAIK v. BOOKER et al.

(692 SE2d 855)

BARNES, Judge.

We granted Dr. Madhav Naik's application for interlocutory appeal to determine whether the trial court erred when it denied summary judgment to Dr. Naik in this medical malpractice action arising from the death of Mrs. Helen C. Robinson.[1] Because we find that the deposition testimony and affidavit of Booker's expert was sufficient to establish a genuine issue of material fact over whether Dr. Naik's professional negligence was a cause of Mrs. Robinson's death, we affirm the trial court.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no

---

[12] See *Hosp. Auth. of Gwinnett County*, supra at 298 (2).

[13] *DeKalb County v. Metro Ambulance Svcs.*, 253 Ga. 561, 562 (1) (322 SE2d 881) (1984).

[1] The action was brought initially by James W. Robinson, as surviving spouse of Mrs. Robinson and as executor of her estate, but upon his death Linda Gail Booker and Jamie M. Folds were substituted as party-plaintiffs.

> genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . . [T]he burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

So viewed, the record shows that on April 16, 1997, 55-year-old Helen C. Robinson was involved in a head-on automobile collision in LaGrange and taken to West Georgia Medical Center. The treating emergency room physician determined that Robinson had suffered a stroke. A neurologist confirmed this and noted that Robinson's left carotid artery was blocked and that she suffered from cerebrovascular disease.

On April 21, Robinson's primary care physician consulted Dr. Naik concerning abdominal surgery. Dr. Naik observed that Robinson was unconscious and unresponsive and that her left carotid artery was blocked; noted evidence of additional strokes; and ordered a scan of Robinson's abdomen, which did not show evidence of any ongoing abdominal bleeding. Based on these observations, Dr. Naik concluded that surgery was not appropriate. Unfortunately, experts later concluded, Robinson was suffering from an internal bleed in her liver or spleen, which could have been repaired. After continuing to receive care from several physicians, Robinson died on May 1, 1997 after suffering a heart attack, and the pathologist concluded that a hematoma in Robinson's spleen had ruptured, causing her death.

At summary judgment, plaintiffs presented both an affidavit and deposition testimony by Dr. James Reilly. Dr. Reilly's affidavit averred that if Dr. Naik had intervened surgically, Robinson "would have had less cerebral anoxia and within a reasonable degree of medical probability would have survived," and concluded that Dr. Naik's deviations from the standard of care "caused or contributed to the cerebral anoxia, and the ultimate death of Helen Robinson." At deposition, Dr. Reilly repeated that Dr. Naik should have operated on Robinson. However, Dr. Reilly could not say that she would have

survived the hospitalization immediately afterward:

A. I would have probably given her only about a 50-50 chance of leaving the hospital in good condition. . . . [A] lot of patients [think that] when you finish the surgery, . . . She's safe. She's done. And I think that she would have survived. She would have been more likely to survive surgery.

Q. But not the hospitalization?

A. . . . Yeah. But to leave[,] to get out of the hospital, she didn't have such [a] great chance.

Q. Putting it this way: If Dr. Naik had taken this lady and done . . . abdominal surgery on this patient and he did this on 100 patients, 50 of those patients are going to ultimately die during that hospitalization; would you say? Would that be correct?

A. Probably so.

Q. Because that's how sick this patient was, isn't it?

A. Yes. Yes.

Shortly afterward, Dr. Reilly returned to this subject:

Q. You can't say with any degree of medical certainty that had Dr. Naik operated on this patient she more likely would [not have] suffered the kind of cerebral injury that she ultimately suffered and died from, can you? . . . You cannot tell us that had Dr. Naik operated on this lady that more likely than not she would have survived this hospitalization? You can't say that, can you?

A. No, I cannot.

In *Zwiren v. Thompson*, 276 Ga. 498 (578 SE2d 862) (2003), the Supreme Court of Georgia set out the law governing the use of expert testimony in medical malpractice cases as follows:

Medical malpractice being a civil cause of action, a plaintiff must prove liability (i.e., duty, negligence, proximate cause) by a preponderance of the evidence. "Preponderance of the evidence" is statutorily defined as "that superior weight of evidence upon the issues involved, which, while not enough to free the mind wholly from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other." OCGA § 24-1-1 (5). The standard requires only that the finder of fact be inclined by the evidence toward one side or the other.

(Citation omitted.) Id. at 499. Our Supreme Court then proceeded to apply this well-established law as follows:

> [T]o establish proximate cause by a preponderance of the evidence in a medical malpractice action, the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson. Using the specialized knowledge and training of his field, the expert's role is to present to the jury a realistic assessment of the likelihood that the defendant's alleged negligence caused the plaintiff's injury. In presenting an opinion on causation, the expert is required to express some basis for both the confidence with which his conclusion is formed, and the probability that his conclusion is accurate. Perhaps in the world of medicine nothing is absolutely certain. Nevertheless, it is the intent of our law that if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment.

(Citations and punctuation omitted.) Id. at 500-501. The court went on to say, however, that

> "reasonable degree of medical certainty," while an *acceptable* means by which an expert may express the confidence the expert has in the conclusion formed and the probability that it is accurate, is not the *required* standard. Georgia case law requires only that an expert state an opinion regarding proximate causation in terms stronger than that of medical possibility, i.e., reasonable medical probability or reasonable medical certainty.

Id. at 503.

The thrust of Dr. Naik's argument is that even if he had operated on Mrs. Robinson and repaired her bleeding spleen, no competent evidence exists to prove that she would have survived her hospitalization. For this conclusion Dr. Naik and the dissent rely upon the testimony of Booker's expert that he could not say with any degree of medical certainty that Mrs. Robinson would not have suffered the kind of cerebral injury that ultimately caused her death or that she would have survived this hospitalization.

Focusing only on this testimony, however, ignores the expert's

affidavit that surgical intervention should have been ordered and that if Dr. Naik had performed the surgery, Mrs. Robinson would have probably survived. In his affidavit, the expert stated: "If Mrs. Robinson's hemorrhage had been identified and stopped sooner by Dr. Naik with surgical intervention, she would have had less cerebral anoxia and within a reasonable degree of medical probability would have survived." The expert further stated that Dr. Naik caused or contributed to the cerebral anoxia and Mrs. Robinson's ultimate death.

The dissent also disregards the expert's deposition testimony that, although she did not have a "great chance" of leaving the hospital, Mrs. Robinson did have a 50/50 chance of leaving and would likely have survived the surgery. According to the expert, Dr. Naik failed to diagnose that Mrs. Robinson was in hypovolent shock, and she was in shock because of an internal bleed in her liver or spleen. While the expert recognized in his deposition that the "vast majority" of Mrs. Robinson's injury from the hypovolemia occurred before her condition was recognized, and Dr. Naik was not responsible for that portion of the injury, he also stated in his affidavit that Mrs. Robinson should have been operated upon and her spleen removed to stop the bleeding.

Additionally, the pathologist who performed the autopsy on Mrs. Robinson testified that her cerebellar vascular accident or insult was not the cause of her death. In his opinion, she had a hematoma in her spleen that ruptured and the injury to her spleen caused her death. According to the pathologist, Mrs. Robinson was admitted to the hospital on April 16 and on April 22 she suffered a sudden, rapid deteriation of her physical well-being. In his opinion, this deterioration was caused by the spleen rupturing.

Although the deposition testimony of Booker's expert regarding whether Mrs. Robinson would have survived the surgery may conflict with his affidavit, this conflict is not an issue this court can resolve. *Whitley v. Piedmont Hosp.*, 284 Ga. App. 649, 653 (1) (644 SE2d 514) (2007) (determination of witness credibility is the jury's province). In *Ezor v. Thompson*, 241 Ga. App. 275 (526 SE2d 609) (1999), we held the self-contradictory testimony rule of *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), did not apply to the testimony of a nonparty expert witness, and this holding was affirmed in *Thompson v. Ezor*, 272 Ga. 849 (536 SE2d 749) (2000). "[C]ontradictions go solely to the expert's credibility, and are to be assessed by the jury when weighing the expert's testimony." Id. at 853.

Accordingly, we are satisfied that the deposition testimony and affidavit of Booker's expert were sufficient to state that Dr. Naik's professional negligence was the cause of Mrs. Robinson's injury and

death within a "reasonable medical probability or reasonable medical certainty." Therefore, the trial court did not err by denying Dr. Naik's motion for summary judgment.

*Judgment affirmed. Miller, C. J., Johnson, P. J., and Ellington, J., concur. Blackburn, P. J., and Mikell, J., concur specially. Andrews, P. J., dissents.*

MIKELL, Judge, concurring specially.

Although I agree with the majority opinion, because the outcome is mandated by *Thompson v. Ezor*,[2] I write separately to urge our Supreme Court to reconsider the rule set out in that case. In addition, I believe that we should address *Richmond County Hosp. Auth. v. Dickerson*,[3] as the trial court relied upon it in denying Naik's motion for summary judgment.

1. Significantly, the OCGA § 9-11-9.1 affidavit in this case was given by one expert, Dr. Jimmy D. Pruitt, who addressed negligence only, while a different expert, Dr. James P. Reilly, submitted an affidavit in opposition to Naik's motion for summary judgment that addressed both negligence and causation. Both parties relied on Reilly's affidavit when arguing the motion for summary judgment.

Reilly swore in his affidavit that "[i]f Mrs. Robinson's hemorrhage had been identified and stopped sooner by Dr. Naik with surgical intervention, she would have had less cerebral anoxia and within a reasonable degree of medical probability would have survived." Later, in his deposition, Reilly significantly backed away from his statement that the patient probably would have survived and instead swore that she only had a fifty-fifty chance of survival.

As noted in the majority opinion, the "conflict" between the expert's deposition testimony and his affidavit creates a question of fact for the jury to resolve. I concur because this outcome is mandated by the decision of our Supreme Court in *Thompson*.[4] As explained by Justice Sears, "[t]he fact that an expert witness's testimony is contradictory has never rendered that testimony inadmissible. . . . [S]uch contradictions . . . are to be assessed by the jury."[5]

I respectfully urge our Supreme Court to overrule *Thompson*. Justice Sears, writing for a unanimous court, was in error when she stated that "the party should not be held responsible under *Prophecy* when . . . contradictions inevitably arise in the testimony of expert

---

[2] 272 Ga. 849 (536 SE2d 749) (2000).

[3] 182 Ga. App. 601 (356 SE2d 548) (1987).

[4] Supra.

[5] (Footnote omitted.) Id. at 853 (2).

witnesses."[6] Experts can and do contradict each other, but a single expert should not contradict himself under oath. If a party is harmed by the contradiction, so be it. After all, the party, or his lawyer, hired this particular expert.[7]

The rule should be that in all cases alleging professional malpractice, the latest testimony of an expert under oath *subject to cross-examination* should control the outcome of a motion for summary judgment. Affidavits, to the extent that they contradict the expert's deposition testimony, should be disregarded. Under this rule the trial judge in *Thompson* would have been affirmed. In *Ezor v. Thompson*, the physician whose affidavit was attached to the complaint later contradicted the affidavit in his deposition testimony.[8] The expert submitted a second affidavit to explain the contradiction. The trial court correctly disregarded the expert's first and second affidavits because they had not been subject to cross-examination.[9]

As everybody but the Sherpas knows, most affidavits are drafted by the lawyer, typed by the lawyer's secretary, and then sent to the witness for signature. At some later time a notary's signature and stamp are added. To equate an affidavit with testimony given subject to cross-examination, and to redirect, is wrong. An affidavit is evidence, but to call it testimony stretches a point. Justice Lumpkin acknowledged this early in Georgia's jurisprudence when he wrote: "Indeed every one who has presided as a judge . . . will doubtless recognize the fact that not infrequently the truth can be reached by a few pertinent questions, though it may be beclouded and obscured in pages of carefully prepared affidavits."[10] More recently, United States Supreme Court Justice Antonin Scalia, writing for an almost unanimous Court in *Crawford v. Washington*,[11] quoted with approval a "prominent Antifederalist" who wrote that "[n]othing can be more essential than the cross-examining of witnesses. . . . Written evidence is almost useless; it must be frequently taken ex parte, and but very seldom leads to the proper discovery of truth."[12]

---

[6] Id., citing *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986).

[7] One of the reasons advanced in *Thompson* for not applying the *Prophecy* rule to experts is disturbing. Justice Sears writes that a party "is without power to prevent his or her witnesses from contradicting themselves" and therefore should not be penalized. *Thompson*, supra. Why should we be solicitous of a party who is unable to make his witness lie on deposition? Parties should not be able to control the testimony of their witnesses, expert or otherwise. An expert witness who makes a mistake in his affidavit should be able to correct it in his deposition. Witnesses should speak the truth, and the truth should prevail.

[8] *Ezor v. Thompson*, 241 Ga. App. 275, 276 (526 SE2d 609) (1999), aff'd, *Thompson*, supra. Id.

[10] *Chattanooga &c. R. Co. v. Morrison*, 140 Ga. 769, 773 (3) (79 SE 903) (1913).

[11] 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).

[12] Id. at 49 (II) (B), citing R. Lee, Letter IV by the Federal Farmer (Oct. 15, 1787), reprinted in 1 B. Schwartz, The Bill of Rights: A Documentary History 469, 473 (1971).

Let us imagine an extreme case. An expert in a lawsuit against a professional, for example a pharmacist, lawyer, or architect, signs an affidavit clearly establishing a defendant's liability for malpractice. At a later deposition the expert testifies that, "I was smoking marijuana when I signed that affidavit. It's all lies, total lies." Under the *Thompson* rule, the defendant could not obtain summary judgment. The parties would be put to the expense of a trial where the jury would be obligated to assess the contradictions.

The Supreme Court of Georgia, and the majority in the Court of Appeals, were too optimistic when they reasoned that contradictions in the testimony would be resolved by a jury. In the regular presentation of evidence at a trial, an affidavit would not be admissible in a plaintiff's case in chief because it was not subject to cross-examination. If the expert has contradicted his affidavit on deposition, and sticks to his deposition testimony on the stand at trial, the plaintiff's attorney can impeach his own witness with his prior inconsistent statement in the affidavit. The prior inconsistent statement would then be admitted as substantive evidence. But if the expert is unavailable for trial, then only the deposition would be admissible. A directed verdict for the defendant would be inevitable. The parties would have been subjected unnecessarily to the expense and trouble of a trial.

A plaintiff who has a strong case and a competent expert will have no difficulty complying with my proposed rule. But a plaintiff with a weak case and a wavering expert will lose at summary judgment.

In the case now on appeal the judgment below should be reversed. But I must obey controlling precedent and therefore I concur specially.

2. Because the trial court relied solely on *Dickerson*[13] in denying Naik's motion for summary judgment, we should address that decision. The *Dickerson* opinion states that "[p]roximate cause is not eliminated by merely establishing by expert opinion that the patient had less than a fifty percent chance of survival had the negligence not occurred."[14] This precedent is directly on point with the case at bar.[15] The case appears to have been overruled by implication, however.

In *Dickerson*, the panel inferred from the attending physician's affidavit that death was not inevitable.[16] It then ruled that the record

---

[13] Supra.

[14] Id. at 602 (1) (b).

[15] The *Dickerson* court was probably using the phrase "proximate cause" as a synonym for cause-in-fact.

[16] *Dickerson*, supra.

did not establish that the "actions or inactions of the hospital staff were not a proximate or contributing cause of Mrs. Dickerson's death," so that "the movant hospital did not . . . carry its burden of proof on summary judgment."[17] *Dickerson* was decided several years before the Supreme Court's landmark decision in *Lau's Corp. v. Haskins*.[18] *Lau's Corp.* reallocated the burden of proof on summary judgment to require the nonmoving party to "point to specific evidence giving rise to a triable issue,"[19] once the movant has demonstrated an absence of evidence to support the nonmoving party's case. The outcome of *Dickerson* would be different today, and the statement regarding "proximate" cause does not comport with case law after *Lau's Corp.* I would urge my colleagues to recognize that *Dickerson* has been overruled by implication.

I am authorized to state that Presiding Judge Blackburn joins in this special concurrence.

ANDREWS, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion because the medical expert in this case could not say with the legally required degree of certainty that Dr. Naik's alleged deviations from the standard of care were the proximate cause of Helen Robinson's death.

In *Zwiren v. Thompson*, 276 Ga. 498 (578 SE2d 862) (2003), the Supreme Court held:

> In order to establish proximate cause by a preponderance of the evidence in a medical malpractice action, the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson. . . . [I]t is the intent of our law that *if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment.*

(Citations and punctuation omitted; emphasis supplied.) Id. at 500-501, citing *Abdul-Majeed v. Emory Univ. Hosp.*, 225 Ga. App. 608, 609 (484 SE2d 257) (1997), overruled on other grounds, *Ezor v. Thompson*, 241 Ga. App. 275, 279 (526 SE2d 609) (1999).

---

[17] (Citations omitted.) Id. at 603 (1) (b).

[18] 261 Ga. 491 (405 SE2d 474) (1991).

[19] Id.

The majority holds that despite Dr. Reilly's refusal to say that Robinson would likely have survived any intervention, his previous affidavit is sufficient to create a question of fact as to causation. See *Thompson v. Ezor*, 272 Ga. 849 (536 SE2d 749) (2000) (*Prophecy* rule does not apply to exclude the contradictory testimony of a nonparty expert witness). But Dr. Reilly's affidavit pointedly refuses to conclude that Dr. Naik's acts or omissions were the *proximate* cause of her "ultimate death," which it instead attributes to her "previously documented cerebrovascular insufficiency." The affidavit is entirely silent, moreover, on the subject broached for the first time at deposition: whether Robinson would have survived the *hospitalization* certain to follow any abdominal surgery. On this topic, Dr. Reilly's deposition is clear: he could not say with a sufficient degree of certainty that she would have survived that hospitalization, which means that he could not render Dr. Naik's considered refusal to intervene as the proximate cause of Robinson's death.

As we have recently repeated, when the "conclusory statements" of a medical expert's affidavit are contradicted in detail by his own deposition testimony, those statements are "simply not sufficient to create a genuine issue of material fact," and summary judgment must be granted to the defendant. *Beasley v. Northside Hosp.*, 289 Ga. App. 685, 689 (658 SE2d 233) (2008). Here, plaintiff's medical expert "could not form an opinion with sufficient certainty so as to make a medical judgment." Id. at 690. As a result, "there is nothing on the record with which a jury [could] make a decision with sufficient certainty so as to make a legal judgment" (id.) — that is, that Dr. Naik's alleged negligence was the proximate cause of the decedent's death. Because a jury would have had no evidentiary basis for reaching a lawful verdict in favor of Booker, the trial court erred when it denied summary judgment to Dr. Naik. I therefore dissent.

DECIDED MARCH 30, 2010 — 

*Willis, McKenzie, DeGennaro & Alford, Nathan D. Cronic*, for appellant.

*Greer, Klosik, Daugherty & Swank, Frank J. Klosik, Jr., Robert J. McCune, Owen, Gleaton, Egan, Jones & Sweeney, H. Andrew Owen, Jr., King & Spalding, Halli D. Cohn*, for appellees.