**FOURTH DIVISION**
**BARNES, P. J.,**
**MILLER and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 15, 2015**

# In the Court of Appeals of Georgia

A15A0334. MARKS et al. v. FLOWERS CROSSING COMMUNITY ASSOCIATION, INC.

MCMILLIAN, Judge.

This appeal arises out of a protracted dispute and ensuing litigation between homeowners' association Flowers Crossing Community Association, Inc. (the "Association") and homeowners Elizabeth Marks and H. Edward Marks (singularly referred to as "Edward" and "Elizabeth" and collectively referred to as the "Marks") in which the Association sought injunctive relief and damages for alleged violations of certain restrictive covenants, recovery of past due homeowners' Association assessments, and attorney fees. The jury subsequently returned a verdict in favor of the Association, and the trial court granted its request for injunctive relief. The Marks filed a motion for new trial, which the trial court denied, and then the present appeal

in which they challenge, inter alia, the damages award and the imposition of an injunction. We agree with the Marks that they are entitled to a new trial and, accordingly, vacate the judgment and remand for further proceedings consistent with this opinion.

The record shows that the Marks purchased their home in the Flowers Crossing community in 1996, and that they were aware that they were subject to the restrictive covenants and conditions contained in the Declaration of Covenants, Conditions and Restrictions for Flowers Crossing ("Declaration of Covenants") at the time they purchased their home. In 2002, the Marks erected a fence enclosing a portion of their backyard without first obtaining approval of the Association's Board of Directors ("Board"),[1] and in 2003 the Association sent the Marks a letter requesting that they tear down the fence. The Marks refused to comply with the Board's request, and in May 2003, Edward Marks appeared before the Board to address the issue of the fence. The Board did not approve the fence as constructed, and the Marks quit paying association dues around that time.

---

[1] Although the Board is the governing body of the Association, unless otherwise noted, we will refer to the Association and the Board interchangeably.

In November 2005, the Marks installed a new garage door. In January 2006, the Marks received a request to appear at the February meeting of the Board, at which time the Board notified the Marks that they had failed to obtain proper approval before they replaced the garage door and that the door needed to be painted to match the trim on the house. The Marks disputed that the architectural standards or any other provision of the Declaration of Covenants required their garage door to exactly match the trim on their house and refused to paint the door, which also remained unchanged and unapproved at the time of trial. In April 2006, the Board, acting through its manager Dean Donald, sent the Marks a letter notifying them they were being assessed fines of $25 per day beginning April 11, 2006 based on their failure to submit an architectural change request form, although the letter did not specify the change for which the form was needed. However, Edward Marks testified that these fines were in addition to the fines which were already being imposed for the fence violation, and Dean Donald testified that it was "logical" that the letter referred to the garage door.

In 2009, the Association filed a complaint against the Marks in the State Court of Gwinnett County seeking to recover past due assessments ("2009 action"). While this action was pending, on March 19, 2010, the Association sent the Marks written

notification that they had violated the restrictive covenants contained in the Declarations by: (1) constructing a fence on the property without the proper prior approval and which was not in keeping with the existing standards of the community; (2) installing a new garage door without the proper prior approval and which was, in essence, the wrong color; (3) storing debris, trash cans and other junk on the exterior of the property; (4) failing to maintain the property in a neat and attractive condition including allowing the paint on the exterior of the house to wear; (5) haphazardly maintaining window screens on some, but not all, windows; (6) failing to properly maintain the lawn and prune shrubs and allowing vines to grow around the front of the house; and (7) failing to pressure wash exterior stairs and walkways. The Marks were given 30 days to correct the alleged violations and placed on notice that failure to remedy the violations would result in the imposition of fines of $25 per day per violation.

Edward appeared before the Board to address the violations on April 12, 2010, and the next day the Board notified the Marks that it would begin imposing fines for the violations. On May 7, 2010, the Board sent the Marks another letter, advising them that the failure to correct the violations within 30 days of the March 19, 2010

4

letter, or by April 19, 2010, had resulted in the imposition of fines in the amounts previously indicated and could result in the initiation of legal action.

Around the same time, the Association filed a motion to amend the 2009 complaint and to transfer the case to superior court. The motion was granted and the case was transferred to Gwinnett Superior Court in May 2010. After the transfer, the Association struck its original complaint in its entirety and filed an amended and recast complaint reasserting its claim for past due assessments and adding claims for injunctive relief and damages for the alleged covenant violations ("2010 action").

The Marks answered and filed a counterclaim, asserting, among several other claims, that the Association's actions toward them were arbitrary and capricious. Apparently, at some point the parties pursued mediation, and in February 2011 the Association voluntarily dismissed its complaint without prejudice;[2] in May 2011, the Marks signed a general release in settlement of all their claims against the Association, which may have arisen before May 11, 2011.

In August 2011, the Association filed another complaint, which was essentially the same as the 2010 complaint, with the exception that the 2011 complaint did not

---

[2] The dismissal does not appear in the appellate record, and we derive certain procedural facts from the testimony presented at trial.

seek damages or injunctive relief based on the installation of the fence ("2011 action"). The 2011complaint initially was not served on the Marks, but in November 2011, the Marks acknowledged service. On December 19, 2011, the Marks filed their answer and another counterclaim, reasserting their contention that the Association had acted, and continued to act, in an arbitrary and capricious manner and that they were entitled to attorney fees and expenses of litigation under OCGA § 13-6-11.

The Association filed separate motions for summary judgment on its complaint and the Marks' counterclaim, and the Marks filed a motion for partial summary judgment on some but not all of the covenant violations, and on their counterclaim. In three separate orders, the trial court (1) granted the Association's motion for summary judgment on the Marks' counterclaim; (2) denied the Association's motion with respect to its claims against the Marks; and (3) denied the Marks' motion for partial summary judgment. The jury subsequently returned a verdict in favor of the Association and awarded $31,325 in damages for fines based on the covenant violations, $5123.75 for past due assessments, and $41,117.58 in attorney fees. The trial court entered judgment on the verdict and issued a permanent injunction

6

requiring the Marks to remedy all but one of the alleged covenant breaches.[3] Following the denial of their motion for new trial, the Marks filed the present appeal in which they raise multiple evidentiary and legal challenges to the jury's verdict and the trial court's grant of injunctive relief; additionally, the Marks assert the trial court erred by granting summary judgment to the Association on their counterclaim.

1. The Marks first challenge the grant of injunctive relief and the imposition of fines for the alleged covenant violations, arguing those claims were either time-barred or without evidentiary support.[4]

(a) The Marks contend the covenant violation claims pertaining to the garage door and window screens were time-barred. We agree.

OCGA § 9-3-29 sets out the statute of limitations applicable to actions for breach of a restrictive covenant. That section provides in relevant part that

---

[3] As more fully set out in this opinion, the Association withdrew its request for injunctive relief as to the omitted covenant violation.

[4] We note that this appeal was originally filed in the Supreme Court, but that court transferred the case to this Court on the basis that the "appellants do not challenge the propriety or scope of the equitable relief granted [but i]nstead . . . argue, in relevant part, that the record did not support a finding of any violation of the covenants and that relief should have been barred by laches or by the appellee's unclean hands."

(a) All actions for breach of any covenant restricting lands to certain uses shall be brought within two years after the right of action accrues, excepting violations for failure to pay assessments or fees, which shall be governed by subsection (b) of this Code section. . . .

(b) In actions for breach of covenant which accrue as a result of the failure to pay assessments or fees, the action shall be brought within four years after the right of action accrues.

(c) For purpose of this Code section, the right of action shall accrue immediately upon violation of the covenant restricting lands to certain uses. . . . This Code section shall not be construed so as to extend any applicable statute of limitations affecting actions in equity.

Id.

As an initial matter, we must determine when the Association first brought their breach of covenant claims for these alleged violations. The Association contends that the limitations period should be calculated using the date of filing of the 2009 complaint, arguing that the 2011 complaint was a renewal of the 2010 complaint, and the 2010 complaint, which was initiated when the case was transferred from state to superior court, was simply a continuation of the 2009 complaint. As more fully set forth below, we reject this contention.

8

[T]he question of relation back of the amendment turns on fair notice of the same general fact situation from which the claim arises. It is apparent that the strict rule of no relation back of the amendment to the time of filing the original complaint because of the assertion of a new cause of action is no longer applicable unless the causes of the action are not only different but arise out of wholly different facts.

(Citation omitted.) *Godwin v. Mizpah Farms, LLLP*, 330 Ga. App. 31, 36 (3) (766 SE2d 497) (2014).

Although the 2009 complaint is not part of the record on appeal, it appears undisputed that the only claim asserted in the 2009 complaint was for past due homeowners' Association assessments, which were unrelated to any alleged covenant violations. Because the claims for damages and injunctive relief based on the various alleged covenant violations asserted both a new cause of action and arose out of entirely different factual circumstances than the claim for past due assessments, there was no relation back to the 2009 action. Thus, even assuming the 2011 action was a renewal of the 2010 action,[5] the Association's claims would only relate back to when it first asserted the covenant violations in the 2010 action.

---

[5] In this regard the Marks point out that the 2011 action was not styled as a renewal action and that the claims were not identical since the claim based on the installation of a fence was not re-asserted in the 2011 complaint.

9

The Association also argues the covenant violations at issue were "chronically repeated and continuing," and under the authority of *Marino v. Clary Lakes Homeowners Assn.*, 322 Ga. App. 839 (747 SE2d 31) (2013) and *Black Island Homeowners Assn. v. Marra*, 263 Ga. App. 559 (588 SE2d 250) (2003), gave rise to a new cause of action for each alleged violation. This contention is also unavailing. Although the viability of the continuing violation rule set out in *Marino* and *Black Island* has recently been drawn into question, see *S-D RIRA, LLC v. The Outback Property Owners' Assn.,* 330 Ga. App. 442 (765 SE2d 498) (2014), these cases remain good law. Id. at 468 (on motion for reconsideration). And as Presiding Judge Barnes explained in her special concurrence, the continuing violation rule applies only where there are *separate and distinct repetitive acts* giving rise to the cause of action. Id. at 463-464. Thus, the continuing violation rule does not apply in cases involving fixtures, or where no separate and repetitive act constituting the violation is shown. Id. at 464-465. Rather, in cases not involving separate and distinct violations, "[t]he right of action accrues '*immediately* upon the violation of the covenant.'" (Citation omitted; emphasis in original.) *Helmley v. Liberty County*, 242 Ga. App. 881, 884 (2) (531 SE2d 756) (2000). In the case at hand, the violations at issue–specifically the window screens and garage door–were in the nature of fixtures.

Moreover, even if they were not, neither violation involved separate, repetitive or distinct acts. Accordingly, the continuing violation rule has no application here.

In light of these determinations, we now turn to the specific issue of whether claims related to the garage door and window screen were time barred. As set out above, the evidence established that the Marks replaced the garage door in November 2005, the Association gave notice of the alleged covenant violations sometime around January 2006, and Edward Marks appeared before the Board in February 2006 to address the alleged violation. Thus, even under the four-year period which arguably applies to the imposition of any fine for this violation, this claim was time-barred at the time the Association filed its complaint in May 2010.[6]

We come to the same conclusion with respect to the claim based on the mis-matched window screens. The undisputed evidence shows that screens were missing from some of the windows when the Marks moved into the house in 1996 and that they last removed a screen from a window in 2005.[7] Although the Association did not

---

[6] The Association withdrew its request for equitable relief based on this claim prior to the time the case was submitted to the jury, and a special interrogatory concerning the garage door was removed from the verdict form. However, because the Association did not withdraw its request for damages, we must still consider whether this claim is time-barred.

[7] It does not appear that screens were added to any of the windows.

11

provide the Marks with notice of any violations concerning the screens until 2010, as stated above, under OCGA § 9-3-29 (a), the right of action accrued "*immediately upon the violation of the covenant.*" (Emphasis in original). *Helmley*, 242 Ga. App. at 883-884. Accordingly, this claim is also time-barred.

(b) The Marks also challenge the jury's verdict and grant of an injunction on several of the other remaining claims, arguing that they cured the covenant violations respecting the vines, shrubs, trash and debris by April 12, 2010, and that the Association failed to introduce any evidence to support its claim that the steps and sidewalks were "filthy." The Association introduced pictures taken around the time of the alleged violations in 2010, and they introduced other pictures that were taken immediately before trial. These pictures demonstrate that the debris and such had been substantially cleared, and that the sidewalks were, even according to the view of a witness for the Association, acceptable.[8] However, pictures at the time of trial did show portions of the house that were either in need of painting or pressure washing,

---

[8] During closing argument, the Association's attorney "condensed" the claims to five by joining the claim respecting the sidewalk with the claim respecting the yard maintenance issues.

and that the yard was not perfectly maintained and that some overgrowth remained.[9] The jury also heard testimony from Edward Marks that he had remedied the problems in April 2010, but the Board had declined his invitation to come out and view the property at that time. On the other hand, the Board presented evidence that its representative and the Association manager had viewed the property at the time of the violations and during the intervening years, and that the property remained in basically the same condition and the violations remained unremedied. These conflicts were for the jury to resolve, and they did so in favor of the Association to the extent they awarded damages in some amount. Thus, we cannot say this verdict was without evidentiary support.

Nevertheless, we conclude the Marks are entitled to a new trial. The amount the jury awarded for the covenant violations corresponded exactly to the amount of fines that would be authorized for a single violation based on a fine of $25 per day calculated from April 2010 until shortly before trial, which was the example given to the jury by the Association's attorney during closing argument. However, because the jury entered the award on a general verdict form, we have no way of knowing

---

[9] Obviously, there would have been changes in these conditions between 2010 and 2013.

whether this award was for the time-barred claims or the other claims. Moreover, it also appears the trial court imposed injunctive relief on a time-barred claim, and may have ordered the Marks to remedy certain violations that no longer existed. Accordingly, the portion of the jury's verdict awarding fines and attorney fees based on the alleged covenant violations must be vacated and a new trial had on these claims. Likewise, the trial court's order granting injunctive relief must be vacated and a new order conforming to the jury's verdict must be entered after the retrial. See *Atlantic Coast Fed. Credit Union v. Delk*, 241 Ga. App. 589, 591-592 (4) (526 SE2d 425) (1999); *Crews v. Roger Wahl*, C. P. A., P. C., 238 Ga. App. 892, 899 (3) (520 SE2d 727) (1999); *Bowdish v. Johns Creek Assoc.*, 200 Ga. App. 93, 97 (5) (406 SE2d 502) (1991).

2. The Marks also contend that the trial court erred by ordering equitable relief because the Association slept on its rights, had unclean hands, acted unfairly and unreasonably and in an arbitrary and capricious manner. Although our holding in Division 1 renders these contentions moot, we note these arguments and defenses may be re-asserted upon retrial.

3. The Marks further contend that the trial court erred by submitting the issue of whether the statute of limitations had run and whether the action had been renewed

14

to the jury and by failing to require the jury to make specific findings of fact. However, we have ruled in the Marks' favor on the statute of limitations defense and the related issue of whether the claims related back, and nothing remains to be retried on those issues. Further, although the Marks did not request a special verdict form or that the jury make specific findings of fact in the first trial, they will be free to do so upon retrial.

4. The Marks also contend that certain evidence admitted at trial was not properly authenticated. Because we cannot predict the evidentiary posture upon retrial, we will not consider this enumeration. However, we point out that this case was tried, and will be retried, under the new Evidence Code, under which the authentication of evidence is governed by OCGA §§ 24-9-901 through 24-9-924.

5. The Marks argue that the trial court erred by granting the Association's motion to quash their subpoena for production of documents. Although we find no abuse of discretion in the trial court's decision to quash their subpoena, which requested voluminous documents on the eve of trial, we note the Marks will have the opportunity to reassert their request before the case is retried.

6. Since we have granted a retrial on other grounds, we also need not address the Marks' assertion that the trial court should have granted a mistrial based upon the

15

intentional misconduct of the Association's counsel at trial. Moreover, the transcript shows that the trial court sustained the Marks' objection to the alleged improper character evidence concerning Edward Marks, properly ruling such evidence inadmissible. Thus, we would not anticipate this error to occur upon retrial.

7. It is necessary, however, for us to address the Marks' contention that the damages awarded by the jury for past due assessments may have included amounts that were time-barred. We agree that the Association's evidence on this issue was confusing and may have misled the jury, and that this award should be recalculated by a new jury upon retrial. Because an award for past due assessments in some amounts was clearly proper, only the issue of the amount of the award should be submitted to the jury upon retrial inasmuch as the evidence has established that an award in some amount was proper.

8. Lastly, the Marks contend the trial court erred by granting the Association's motion for summary judgment on their December 2011 counterclaim. We agree in part. It appears the trial court granted the motion based on the general release and settlement the Marks executed prior to the filing of the August 2011 complaint, finding there had been an accord and satisfaction on all issues set out in the Marks' counterclaim. However, the general release was specifically limited to claims which

occurred on or before May 11, 2011, or which were pleaded or might have been pleaded before that date. Thus, although summary judgment was proper to the extent the Marks' claims were based on incidents which occurred before the cut-off date stated in the release, to the extent the Marks have asserted claims based on actions the Association took after that date, the order must be reversed.

*Judgment affirmed in part, reversed in part, and vacated in part. Barnes, P. J., and Miller, J., concur.*