**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER, and MARKLE, JJ.,**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 24, 2022**

# In the Court of Appeals of Georgia

A22A0149. NORTHEAST GEORGIA MEDICAL CENTER, INC. et al. v. METCALF et al.

MERCIER, Judge.

Francis Lorraine Mitchell died following a surgical procedure performed by Dr. Andrew Green. Mitchell's mother (Shirley Metcalf), acting individually and as executrix of Mitchell's estate, and her adult children (Kerrigan Blackwell and Brandon Mitchell), acting individually, sued Green and several additional providers for medical malpractice and ordinary negligence, seeking damages for wrongful death and other claims. At the end of a multi-day trial, a jury returned a general verdict for the plaintiffs in the amount of $3 million.

The defendants appeal from the judgment entered on the verdict, arguing that the plaintiffs lacked authority to bring a wrongful death action, that the trial court

erred in denying their motion for directed verdict on the ordinary negligence claim, and that the court erred in admitting certain evidence. For reasons that follow, we vacate the trial court's judgment and remand for a new trial.

Viewed favorably to the jury's verdict, see *Hillman v. Aldi, Inc*., 349 Ga. App. 432, 432 (825 SE2d 870) (2019), the evidence shows that on Tuesday, May 3, 2016, Green operated on Mitchell to remove an ovarian mass. When Mitchell returned home later that day to recuperate, she was in significant pain, and Metcalf contacted Green's office because "it seemed like something was wrong." Although the office staff made suggestions for managing the pain, Mitchell's discomfort continued. That evening, Metcalf called an ambulance, and Mitchell returned to the hospital. She was admitted, but released the following day (Wednesday). Back at home, Mitchell remained in discomfort. On Thursday, May 5, 2016, Metcalf called Green's office multiple times, reporting that Mitchell's condition had not improved and that she believed something was wrong. The office, however, did not return her calls.

On Friday morning, Mitchell was agitated and "out of her head." After Metcalf called Green's office again, the office finally responded to her, indicating that Green had written a prescription for pain medication. Later that night, however, Mitchell became unresponsive and died. An autopsy revealed that a small perforation or hole

2

in her bowel had caused an abdominal infection, resulting in her death. The medical examiner who conducted the autopsy concluded that the perforation occurred during the surgery performed by Green.

The plaintiffs sued Green and other providers to recover for Mitchell's wrongful death, pre-death pain and suffering, medical expenses, and additional damages.[1] At trial, a medical expert testified that the perforation occurred during surgery, that Green failed to discover and remedy the perforation, and that the perforation caused Mitchell to enter septic shock, leading to her death. The jury awarded the plaintiffs $3 million, and this appeal followed.

1. The defendants first argue that the plaintiffs lacked authority or standing to bring a claim for Mitchell's wrongful death. We agree.

Wrongful death actions are governed by Georgia's Wrongful Death Act ("the Act"), OCGA § 51-4-1 et seq. Because there is no common law right to file a claim for wrongful death, the Act is in derogation of common law, and its scope "must be limited in strict accordance with the statutory language used therein." *Connell v.*

_____

[1] See *Bibbs v. Toyota Motor Corp.*, 304 Ga. 68, 72 (2) n.6 (815 SE2d 850) (2018) ("A survivor's statutory claim for a decedent's wrongful death and an estate's common-law claim for the same decedent's pain and suffering are distinct causes of action.") (citation and punctuation omitted).

*Hamon*, 361 Ga. App. 830, 832 (863 SE2d 744) (2021) (citation and punctuation omitted). The Act addresses standing specifically, identifying the circumstances under which particular classes of individuals may bring a wrongful death claim. Pursuant to OCGA § 51-4-2 (a), "[t]he surviving spouse or, if there is no surviving spouse, a child or children, either minor or sui juris, may recover for the homicide of the spouse or parent the full value of the life of the decedent, as shown by the evidence."[2] Absent a surviving spouse or child, the decedent's parents may file the wrongful death claim. See OCGA §§ 19-7-1, 51-4-4. And if no person is otherwise entitled to bring the claim, the administrator or executor of the decedent's estate may file a wrongful death action. See OCGA § 51-4-5 (a).

The plaintiffs in this case are Mitchell's mother (Metcalf) and two adult children (Kerrigan and Brandon). As noted above, a decedent's children, parents, and estate executor are in the line of succession to bring a wrongful death action. The first person authorized to file a claim, however, is a surviving spouse. See OCGA § 51-4-2 (a). And the record shows that Mitchell was married at the time of her death.

---

[2] In this context, the term "homicide" includes "all cases in which the death of a human being results from a crime, from criminal or other negligence, or from property which has been defectively manufactured, whether or not as the result of negligence." OCGA § 51-4-1 (2).

Although she and her husband were estranged, they were still married when Mitchell died, and the plaintiffs have cited no evidence that her husband was not alive at the time of trial. In fact, the husband provided deposition testimony during the litigation.

Under the plain terms of OCGA § 51-4-2 (a), Mitchell's husband was the proper party to seek recovery for her wrongful death. Nevertheless, the plaintiffs argued below — and they contend on appeal — that the trial court had equitable authority to grant them standing because Mitchell's estranged husband lacks a relationship with his son Brandon, is not Kerrigan's father, and elected not to pursue a wrongful death claim. The trial court agreed, purporting to vest "exclusive standing" in Mitchell's mother and children.

It is true that Georgia courts have applied an equitable exception to the wrongful death standing requirements in cases involving *minor* children and a surviving spouse who cannot be found or elects not to file a claim. See *Brown v. Liberty Oil & Refining Corp.*, 261 Ga. 214, 215-216 (2) (403 SE2d 806) (1991); *Emory Univ. v. Dorsey*, 207 Ga. App. 808, 809-810 (2) (429 SE2d 307) (1993); see also *Blackmon v. Tenet Healthsystem Spalding, Inc.*, 284 Ga. 369, 371 (667 SE2d 348) (2008) ("Although the [wrongful death] statute says the deceased's surviving spouse must bring the action, both this Court and the Court of Appeals have allowed

5

other persons acting in a representative capacity to maintain a wrongful death action on behalf of a minor child where the surviving spouse declines to pursue the claim."). But this litigation does not involve minor children. Mitchell's mother and *adult* children seek an exception to the Act's provisions. And we recently determined in *Connell*, supra, that the exception does *not* extend to adult children in a case such as this.[3]

The *Connell* court addressed the key issue before us: whether a trial court may leapfrog an estranged spouse who refuses to bring a wrongful death claim and vest standing in the decedent's adult child (or another party down the line of standing succession). See id. at 837. After generally discussing equity jurisdiction, as well as the history of the Act's standing requirements, the *Connell* court answered that question in the negative, concluding that the trial court had "impermissibly expanded the scope of the equitable exception . . . [by] granting [the decedent's child], an adult, standing to bring a wrongful death action where the surviving spouse, albeit estranged, elected not to do so." Id. As the court explained:

---

[3] Here, like in *Connell*, there is no allegation that the surviving spouse cannot be found, that he abandoned a legal obligation to support the *adult* children, or that he was somehow unable to bring a wrongful death claim. See *Connell*, supra at 835, 383.

6

Even when there are compelling circumstances, we cannot ignore the plain language of the statute and rewrite it to suit the facts of a particular case. The right to make such revisions or amendments is placed in the hands of the legislature, not the courts.

Id. at 838.

Pursuant to the Act, Mitchell's husband — not her mother or adult children — had authority to bring a wrongful death action. Although equity permits a trial court to avoid the Act's strict standing requirements in some situations, this is not such a case. As in *Connell*, the trial court improperly expanded the equitable exception by granting the plaintiffs wrongful death standing over a surviving spouse. See *Connell*, supra at 837. The plaintiffs were not entitled to recover for Mitchell's wrongful death, and the trial court erred in submitting their wrongful death claim to the jury. See id. at 838-389; *King v. Goodwin*, 277 Ga. App. 188, 188-190 (626 SE2d 165) (2006) (affirming summary judgment for defendants on wrongful death claim not brought by proper party).

Given the jury's general verdict for the plaintiffs, we cannot determine what portion of the $3 million award related to the improper wrongful death claim. Accordingly, we must vacate the judgment entered on the jury's verdict and remand for a new trial on the non-wrongful death claims. See generally *Marks v. Flowers*

7

*Crossing Community Assn.*, 333 Ga. App. 476, 482 (1) (b) (773 SE2d 814) (2015) (vacating judgment entered on jury's verdict and remanding for a new trial; "because the jury entered the award on a general verdict form, we have no way of knowing whether this award was for the [invalid] claims or the other claims").

2. In a separate claim of error, the defendants argue that the trial court erred in denying their motion for directed verdict on the plaintiffs' ordinary negligence claim. Because resolution of this alleged error could impact the retrial of the non-wrongful death claims, we will address it here. See, e.g., *Jonas v. Jonas*, 280 Ga. App. 155, 160 (3) (a) (633 SE2d 544) (2006) (claim on which directed verdict should have been granted cannot be considered at retrial).

A trial court may direct a verdict only if "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict." *Central Ga. Women's Health Center v. Dean*, 342 Ga. App. 127, 133 (1) (b) (800 SE2d 594) (2017) (citation and punctuation omitted). We will affirm the denial of a directed verdict if any evidence supports the jury's verdict. See id. Construed favorably to the plaintiffs, the evidence was sufficient to avoid a directed verdict on ordinary negligence here. See id. (evidence construed in light most favorable to party opposing the motion for directed verdict).

The plaintiffs' ordinary negligence claim focused on the alleged failure of Green's staff to properly record and relay to Green information from the post-surgery telephone calls made by Mitchell's family. To this end, the plaintiffs presented evidence that the office staff did not document several of the calls, including those made by Metcalf on Thursday, May 5, 2016, which impeded communication with Mitchell's health care team and violated the medical practice's own internal policies. A registered nurse testified that, in her experience, Mitchell would have been told to return to the hospital on Thursday if Metcalf's first call that day had been properly documented. The plaintiffs' surgical expert further testified that at that point, Mitchell was suffering from sepsis, but her life was "still salvageable" and she had a "50/50" chance of survival.[4]

On appeal, the defendants argue that no evidence established a causal link between Mitchell's death and the staff's failure to document telephone calls. Death, however, was not the only injury alleged here. The estate's non-wrongful death claims, for example, sought compensation for Mitchell's pre-death pain and suffering.

---

[4] Any contradictions in the expert's testimony (such as whether Mitchell's life was "salvageable" or only had a 50/50 chance of survival) goes to the expert's credibility, as assessed by the jury. See *Naik v. Booker*, 303 Ga. App. 282, 286 (692 SE2d 855) (2010).

And based on the evidence, the jury was authorized to find that if the staff had properly recorded the calls, Mitchell would have been sent back to the hospital on Thursday, at which point her life was "salvageable" and she had a 50 percent chance of survival. Such evidence created a factual question as to whether a failure to document calls injured Mitchell. See *Naik v. Booker*, 303 Ga. App. 282, 284-286 (692 SE2d 855) (2010) (question of fact remained as to whether surgeon's failure to operate caused patient's death, given expert's testimony that patient would have survived had surgery been performed and had a "50-50 chance of leaving the hospital in good condition" following surgery); *MCG Health v. Barton*, 285 Ga. App. 577, 583 (2) (647 SE2d 81) (2007) (question of fact as to causation raised by evidence that if doctor had met standard of care with respect to treating plaintiff's testicular injury, plaintiff would have had a 50 percent chance of avoiding testicle loss). The trial court properly denied the defendants' motion for directed verdict on the ordinary negligence claim. See *Naik*, supra; *MCG Health*, supra.

3. Finally, the defendants argue that the trial court erred in permitting the plaintiffs to cross-examine Green regarding prior incidents and lawsuits involving his other patients. The record shows that the trial court granted the defendants' pre-trial motion in limine to exclude evidence of other lawsuits, claims, or complaints. During

10

cross-examination, however, the trial court permitted plaintiffs' counsel to ask Green about two prior incidents involving other patients after counsel argued that the questions were relevant to "explor[e]" Green's testimony that he performed surgeries with "precision."

The defendants argue that the trial court should not have permitted this avenue of cross-examination. It is unclear, however, whether the testimony and cross-examination of Green (and any objections thereto) will develop in the same manner on retrial. Under these circumstances, we decline to address this claim of error.

*Judgment vacated and case remanded. Dillard, P. J., and Markle, J., concur.*